# EXHIBIT 1

aring Date: No hearing... This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts. .9
:ation: <<CourtRoomNumber>> Forms are free at ilcourts.info/forms.
ge| Calendar, 10 24-CV-12118 Document... 10/23/24 Page 2 of 23 PageID #:9

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| Cook COUNTY | | **FILED** 10/18/2024 1:21 PM IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL 2024CH09556 Calendar, 10 29842004 |

| **Instructions ▼** | | |
|---|---|---|
| Enter above the county name where the case was filed. | JOSHUA SAATHOFF, individually and on behalf of all others similarly situated, **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | **v.** | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)* GENE BY GENE, LTD. D/B/A FAMILYTREEDNA | 2024CH09556 **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

# IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

## Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce
- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity
- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: 24 CH 09360

| | | |
|---|---|---|
| In 1a, enter the name and address of the first Defendant/Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:** | |

a. Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*: GENE BY GENE, LTD. D/B/A FAMILYTREEDNA

Registered Agent's name, if any: MAX BLANKFELD

Street Address, Unit #: 1445 NORTH LOOP WEST, SUITE 820

City, State, ZIP: HOUSTON, TEXAS, 77008

Telephone: (713) 474-2401       Email: info@genebygene.com

In 1b, enter a second address for the first Defendant/Respondent, if you have one.

b. If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: _____

Street Address, Unit #: _____

City, State, ZIP: _____

Telephone: _____  Email: _____

In 1c, check how you are sending your documents to this Defendant/Respondent.

c. Method of service on Defendant/Respondent:

☐ Sheriff        ☐ Sheriff outside Illinois: _____

*County & State*

☑ Special process server    ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/Respondent. Attach an *Additional Defendant/Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*

*Number*

and *Service Information* forms.

In 2a, enter the amount of money owed to you. Check 2b if you are asking for the return of tangible personal property.

**2.** **Information about the lawsuit:**

a. Amount claimed:  $ Class-wide damages greater than $50,000

☐ b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In 3, enter your complete address, telephone number, and email address, if you have one.

**3.** **Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Nicholas F. Wasdin

Street Address, Unit #: 110 N. Wacker Dr., Suite 2500

City, State, ZIP: Chicago, IL, 60606

Telephone: (312) 343-5361       Email: nwasdin@dwowas.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*.
To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms.

Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box 4a. Otherwise, if the clerk gives you a court date, check box 4b.

**4.** **Instructions for person receiving this *Summons* (Defendant):**

☑ a. To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address: 50 W Washington St # 80

City, State, ZIP: Chicago, IL 60602

| | |
|---|---|
| **In 4a,** fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b. Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>       *Date*              *Time*                *Courtroom*<br>**In-person at:** |

**In 4b,** fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

_____
*Courthouse Address*     *City*     *State*     *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: _____
                    *Call-in number for telephone remote appearance*

By video conference: _____
                    *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                    *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
   *Website*

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____<br><br>**Clerk of the Court:**    10/18/2024 1:21 PM IRIS Y. MARTINEZ<br>                 _____ |

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - o  If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

---

Date of Service: _____
                    *(Date to be entered by an officer or process server on the copy of this*
                    *Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 2024CH09556

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| | | |
|---|---|---|
| **STATE OF ILLINOIS,**<br>**CIRCUIT COURT**<br><br>Cook_____ **COUNTY** | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | *For Court Use Only* |

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | JOSHUA SAATHOFF, individually and on behalf of all others similarly situated.<br><br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>GENE BY GENE, LTD. D/B/A FAMILYTREEDNA<br><br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**2024CH09556**

**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
              *First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

   ☐ Personally on the Defendant/Respondent:
      ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____  Race: _____
      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address, Unit#: _____
      City, State, ZIP: _____

   ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address, Unit#: _____
      City, State, ZIP: _____
      And left it with: _____
                *First, Middle, Last*
      ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____  Race: _____
      and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

   ☐ On the Corporation's agent, _____
                         *First, Middle, Last*
      ☐ Male  ☐ Female  ☐ Non-Binary  Approx. Age: _____  Race: _____
      On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
      Address: _____
      City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |
|---|---|

**By:** _____

*Signature by:*  ☐ Sheriff
            ☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private
    detective

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**FEES**
Service and Return:    $ _____
Miles _____    $ _____
Total                 $ _____

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

| **Print Form** | **Save Form** | **Reset Form** |
|---|---|---|

FILED
10/18/2024 10:56
IRIS Y. MARTINE.
CIRCUIT CLERK
COOK COUNTY,
2024CH09556
Calendar, 10
29837651

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

JOSHUA SAATHOFF, individually and on
behalf of all others similarly situated,

              *Plaintiffs,*

    v.

GENE BY GENE, LTD. D/B/A
FAMILYTREEDNA

              *Defendant.*

Case No. 2024CH09556

## CLASS ACTION COMPLAINT

Plaintiff Joshua Saathoff, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Gene by Gene, Ltd. d/b/a FamilyTreeDNA ("FamilyTreeDNA") to put an end to its unlawful disclosure of Plaintiff's and the proposed Class's genetic testing information. Plaintiff, on behalf of himself and all other similarly situated, upon personal knowledge as to Plaintiff's own conduct, and on information and belief as to all other matters, including based on an investigation by counsel, complains and alleges as follows:

### NATURE OF THE ACTION

1.    This is a class action against FamilyTreeDNA for violating Plaintiff's privacy rights under the Illinois Genetic Information Privacy Act, 410 ILCS 513, *et seq.* ("GIPA") by disclosing consumers' genetic testing information through the use of a hidden tracking code created by Meta Platforms, Inc. (formerly known as Facebook) and integrated into FamilyTreeDNA's online platform for purchasing and analyzing genetic testing, familytreedna.com.

2.    Through familytreedna.com, consumers can order testing kits to "[b]egin [their] DNA journey." Those testing kits are advertised as a way to "[u]nlock each part of [their

customers'] genetic ancestry with autosomal DNA, mtDNA, and Y-DNA testing." The genetic

testing allows Defendant's customers to make discoveries and insights about their family, paternal,

and maternal ancestry, which FamilyTreeDNA refers to as a "genetic genealogy."

3.      But that's not all Defendant does with its customers' genetic testing information.

Unbeknownst to its consumers, Defendant shares its customers' genetic testing information with

a third-party marketing company—without the customer's consent—at each interaction with

familytreedna.com.

4.      In particular, FamilyTreeDNA shares its customers' genetic testing information

with a third-party marketing company named Meta Technologies, Inc. ("Meta") for advertising

and marketing purposes.

5.      Defendant makes these disclosures through a hidden tracking technology called

the "Facebook Pixel." The "Facebook Pixel" is a hidden tracking code incorporated by Defendant

into familytreedna.com that sends Meta time-stamped, personally-identifiable records of

consumers, such as Plaintiff and Class members, including information which identifies: (a) a

person as having purchased a genetic testing kit from FamilyTreeDNA; (b) whether the person

completed the test; and (c) the identity of the person upon whom the genetic test was performed.

6.      Meta combines this personal information with other information about each

consumer gathered from other sources and uses it for marketing and advertising purposes,

including to create "Custom Audiences" for Defendant's marketing.

7.      Defendant's practice of disclosing its customers' genetic testing information to

third parties without first obtaining consent violates the Illinois Genetic Information Privacy Act,

410 ILCS 513, *et seq.*, which makes it unlawful for companies that collect genetic testing

information to disclose such information to third parties without first obtaining written

2

authorization.

## PARTIES

8.     Plaintiff Joshua Saathoff is a natural person and a citizen of the State of Illinois.

9.     Defendant Gene by Gene, Ltd. d/b/a FamilyTreeDNA is a company organized and existing under the laws of Texas, with its principal place of business located at 1445 N Loop W, Houston, TX 77008. FamilyTreeDNA does business throughout the State of Illinois, including Cook County, and more broadly throughout the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant transacts business in Illinois and discloses its Illinois customers' private genetic testing information in violation of Illinois law.

11.     Venue is proper in Cook County because Defendant is a nonresident of Illinois. 735 ILCS 5/2-101 ("If all defendants are nonresidents of the State, an action may be commenced in any county.").

## COMMON FACTUAL ALLEGATIONS

### *The Illinois Genetic Information Privacy Act.*

12.     Recognizing that "[t]he public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information," the Illinois Legislature enacted GIPA. 410 ILCS 513/5.

13.     Under GIPA, "genetic information" includes "[a]ny request for, or receipt of, genetic services, … by the individual or any family member of the individual." 410 ILCS 513/10; 45 CFR 160.103.

14.     Under GIPA, "genetic services" means, among other things, "[a] genetic test." 410

3

ILCS 513/10; 45 CFR 160.103.

15.　　Under GIPA, "genetic testing" and "genetic test" mean "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes." 410 ILCS 513/10; 45 CFR 160.103.

16.　　Under GIPA, genetic testing and genetic information is confidential.

17.　　Section 15 of GIPA proscribes any person from, among other things, disclosing genetic testing and information derived from genetic testing to any person other than the individual tested or to persons specifically authorized in writing in accordance with the Act. *See* 410 ILCS 513/15(a).

18.　　Section 30 of GIPA, in turn, separately provides that "[n]o person may disclose ... the identity of any person upon whom a genetic test is performed ... in a manner that permits identification of the subject of the test," except to certain enumerated third parties not applicable here. 410 ILCS 513/30(a).

19.　　As discussed throughout this Complaint, Defendant violated GIPA by disclosing to a third-party marketing company the identities of individuals who requested, purchased, and completed a genetic test in a manner that permitted their identification.

### FamilyTreeDNA.com Violates the Illinois Genetic Information Privacy Act.

20.　　Familytreedna.com is a direct-to-consumer commercial genetic testing company that specializes in genetic genealogy—"the use of DNA testing to establish relationships between individuals and determine ancestry."

21.　　Genetic testing information is extremely sensitive. Defendant understands this, and provides the following commitment to its customers: "we do not share your name or other common identifying information linked to your genetic data with third parties, except as legally required to

4

comply with a valid subpoena or a court order or with your explicit consent."

22.    Unbeknownst to its customers, however, familytreedna.com routinely discloses to a third-party marketing company the identities of individuals on whom a genetic test was performed in a manner that permits their identification.

23.    Defendant fails to inform its customers that it discloses this information to third parties and fails to obtain written authorization to disclose such information from the consumer in violation of GIPA.

### *The Facebook Pixel*

24.    The Facebook Pixel is a "web beacon" that is used to track and disclose individuals' online activities to Meta.

25.    Meta is an advertising company which sells advertising space on the social media platforms it operates, including Facebook and Instagram.

26.    Meta calls itself a "real identity platform," meaning users are allowed only one account and must share the name they go by in everyday life. Users must provide Meta their first and last name to create an account.

27.    Meta's advertising is based on sophisticated user-categorizing and targeting capabilities that are fueled by the personal data of users of the social media platform and other Internet users.

28.    Meta surveils users' online activities both on and off Meta's own websites and apps, which allows Meta to make highly personal inferences about users, such as about their interests, behavior, and connections.

29.    Meta compiles information it obtains and infers about Internet users and uses it to identify personalized audiences likely to respond to particular advertisers' messaging.

5

30.     The Facebook Pixel is a free and publicly available piece of code that Meta allows third-party website developers to install and integrate into their websites.

31.     The code that is used to execute the Pixel functions is written into the base code of the website.

32.     The Facebook Pixel is installed on a website as a first-party cookie.

33.     Cookies are small pieces of text used to store information on web browsers. They store and receive identifiers and other information on computers, phones and other devices, and they can serve a number of different functions, such as personalizing content and tailoring and measuring ads.

34.     A "first-party cookie" is designed to circumvent improvements in how web browsers block third-party cookies (a primary means by which Meta historically tracked people across the web). Being embedded in websites as a first-party cookie, rather than as a third-party cookie, causes users' browsers to treat that Pixel as though it is offered by the website they are visiting, rather than by Meta, a third party.

35.     When the Pixel is embedded in a website as a first-party cookie, the third-party cookie blocking functions of modern web browsers do not inhibit the Facebook Pixel's collection of data.

36.     Because of the Pixel design, the Pixel causes users' browsers to treat the Pixel as though it is offered by the website itself.

37.     From a technological perspective, the Pixel is a part of the code of the website, and a users' browser understands the Pixel to be a part of the website itself, not a third-party.

38.     The Facebook Pixel is configured to capture a substantial amount of information by default.

6

39.     Since 2015 when it was introduced, the Facebook Pixel has transmitted HTTP header information, including the URL of each page visited on a website, by default. HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."

40.     Meta also automatically collects "Pixel-specific Data," which includes "the Pixel ID and cookie."

41.     For Facebook account-holders, "Pixel-specific Data" includes the "c_user" cookie, which transmits to Meta the users' Facebook user ID (a "Facebook ID").

42.     The Facebook ID is a unique and persistent identifier assigned to each Facebook user.

43.     The Facebook ID is personally identifiable information because it (a) identifies the individual user to Meta; and (b) allows anybody—not just Facebook—to identify the individual online. If anyone types www.facebook.com/[FacebookID] into a web browser, it will load that individual's Facebook page, which contains a person's name and often a person's photographs and location information.

44.     The Facebook ID number is a number—just like a social security number, driver's license number, or telephone number—which can be used by anyone to identify an individual.

45.     A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of https://facebook.com. By way of example, the Facebook ID for Mark Zuckerberg is 4. Logging in to Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck.

46.     A website developer can also choose to track actions taken on their website with

7

the Facebook Pixel, called an "Event." When a chosen action is taken, the Facebook Pixel is triggered and sends Meta certain data describing the action(s) taken.

47.     Meta associates the information it obtains via the Facebook Pixel with other information regarding the user, using personal identifiers that are transmitted concurrently with other personal information the Pixel is configured to collect.

48.     The developer can then create "Custom Audiences" based on Events and can target ads on Meta's platforms.

49.     Meta assigns a unique numerical identifier to each Facebook Pixel and maintains records associating each Pixel with the data it transmits and the website where it is embedded.

### *FamilyTreeDNA uses the Facebook pixel to track and disclose users' genetic testing information to Meta*

50.     FamilyTreeDNA has integrated the Facebook Pixel throughout its website.

51.     The numerical identifier associated with the Facebook Pixel which currently operates on FamilyTreeDNA.com is 2165360733726777.

52.     The FamilyTreeDNA webpages are identified by Uniform Resource Locators (URLs). The URL of a webpage is typically shown in the address bar of the user's browser.

53.     Part of the URL is referred to as the path. FamilyTreeDNA includes a plain-language description of the contents of a webpage in the path.

54.     When a customer places a genetic testing kit from FamilyTreeDNA in their online shopping cart, the URL path includes the plain language description that the webpage is a shopping cart. The URL is familytreedna.com/cart.

55.     When a customer places an order for a genetic test kit from FamilyTreeDNA, the URL path includes the plain language description that the webpage is the checkout page. The URL is familytreedna.com/checkout.

8

56.     When a customer completes an order for a genetic test kit from FamilyTreeDNA, the URL path includes the plain language description thanking the customer for the purchase. The URL is familytreedna.com/thank-you.

57.     Once the order is complete, the customer receives a welcome email with a kit number and password with a link that directs the customer to the sign-in page. The URL path of the sign-in page includes the plain language description the customer is signing in. The URL is familytreedna.com/sign-in.

58.     After a user is authenticated, the user lands on a welcome screen. The URL for the welcome screen is familytreedna.com/welcome.

59.     After the welcome screen, the user lands on the FamilyTreeDNA dashboard. The URL for the dashboard is familytreedna.com/dashboardv2.

60.     FamilyTreeDNA includes a tab on the dashboard for "Results & Tools." When a user does not have any results from the FamilyTreeDNA genetic testing, a user cannot click on this tab.

61.     In contrast, when a user has completed their FamilyTreeDNA genetic testing and their genetic testing results are available, a user can click on the "Results & Tools" tab in their dashboard and navigate to pages within the tab. For instances, a user can navigate to the "Family Finder Matches" page. The URL for this page is: https://www.familytreedna.com/my/familyfinder/matches/detail-view.

62.     After a customer's genetic testing results are available, FamilyTreeDNA allows the user to unlock additional features it calls, "myOrigins," "ancientOrigins," "chromosome browser," and others. Each URL includes the plain language description of the page that is not available unless the user has purchased the premium feature.

9

63.     There are numerous features of FamilyTreeDNA that a user can only access once their test results are available and, in some cases, when the user has added the feature on or otherwise upgraded to the feature. For instance, other pages allow a user with completed test results to view the user's Y-DNA Haplotree or mtDNA Haplotree. The corresponding URLs contain the following plain language: https://www.familytreedna.com/ public/y-dna-haplotree/A and https://www.familytreedna.com/public/mt-dna-haplotree/L.

64.     Each time a FamilyTreeDNA user accesses these pages, FamilyTreeDNA shares with Meta via the Facebook Pixel an "Event" called "PageView" that tells Meta, among other data points, the URL of the page that the consumer is viewing on FamilyTreeDNA.com, which, as described above, disclose the portions of the FamilyTreeDNA website the user is accessing and, by extension, the fact that the user has obtained a genetic test from FamilyTreeDNA.

65.     Therefore, as FamilyTreeDNA customers interact with FamilyTreeDNA, FamilyTreeDNA shares with Meta information that confirms that the user completed the purchase of a FamilyTreeDNA genetic testing kit, that the user has obtained the results of the genetic testing, that the user is viewing the test results, and, in some cases, the very test that was run, *e.g.* a Y-DNA test or an mtDNA test.

66.     When FamilyTreeDNA is sharing this genetic testing information, it also shares the c_user cookie, which includes the user's Facebook ID, and thus identifies to Meta the specific individual that obtained the test from FamilyTreeDNA.

67.     In that way, the data FamilyTreeDNA discloses is tied to unique identifiers that identify specific consumers. The recipients of the data—e.g., Meta—receive both information showing a genetic test was purchased, performed, and the type of test, *and* a unique individual identifier, all as part of a single data transmission.

10

68.     On information and belief, at all relevant times FamilyTreeDNA understood the functionality of the Facebook Pixel—including that it enabled FamilyTreeDNA to show targeted advertising to its subscribers based on their genetic testing information—and thus knew that the Facebook Pixel disclosed FamilyTreeDNA consumers' genetic testing information to Meta. Indeed, information regarding the Facebook Pixel's functionality is published by Facebook online, and is also described in the user agreement that FamilyTreeDNA entered into with Meta.

69.     Tracking pixels such as these are not necessary for Defendant to operate FamilyTreeDNA's platform and are instead used for the sole purpose of enabling targeted advertising to Defendant's benefit.

70.     As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Meta and other third parties for its own personal profit the genetic testing information of FamilyTreeDNA's users.

71.     By disclosing its consumers' genetic testing information to unauthorized third parties – which undeniably reveals their identity and that a genetic test was performed on them – Defendant violated the GIPA.

## PLAINTIFF ALLEGATIONS

72.     Plaintiff Joshua Saathoff is a resident of Dixon, Illinois. Plaintiff purchased a genetic testing kit from FamilyTreeDNA in 2018 to better understand his ancestry. FamilyTreeDNA performed genetic testing on Plaintiff, including a y-DNA test, and reported to him his results, including information about his ancestry, via the FamilyTreeDNA website. Plaintiff has interacted with the FamilyTreeDNA website repeatedly since then, as recently as 2021, including to view his family tree and other information derived from the testing that is only accessible to customers who have completed genetic testing. Plaintiff had a Facebook account

during the relevant time period. During the relevant time period, Plaintiff accessed his FamilyTreeDNA account, including to view his ancestry—information derived from his DNA testing—while logged into his Facebook account.

73.     Prior to filing suit, Plaintiff retained an expert to analyze the data FamilyTreeDNA shared with Meta after Plaintiff logged into his account. That analysis confirmed that the information described throughout this complaint was disclosed to Meta by FamilyTreeDNA when Plaintiff accessed his FamilyTreeDNA account online, through the systematic data sharing practice facilitated by the Facebook Pixel as described herein.

74.     FamilyTreeDNA disclosed to third parties, including Meta, Plaintiff's genetic testing information in a manner that permits third parties, including Meta, to identify Plaintiff as having requested, purchased and completed a genetic test.

75.     Plaintiff did not provide consent to this disclosure in a manner that complies with GIPA.

## CLASS ALLEGATIONS

76.     **Class Definition**: Plaintiff Joshua Saathoff brings this action pursuant to Illinois Code of Civil Procedure 735 ILCS 5/2-801 on behalf of himself and a proposed class, defined as follows:

> All persons in the State of Illinois who purchased a genetic test from FamilyTreeDNA and had their genetic testing information disclosed to Meta by FamilyTreeDNA.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge(s) to whom this case is assigned and their immediate family, (3) persons who execute and file a timely request for

12

exclusion, (4) the legal representatives, successors, or assigns of any such excluded person; and (5) Plaintiff's counsel and Defendant's counsel.

77. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has performed over 2 million DNA tests and, on information and belief, has disclosed to third parties the genetic information of thousands of Illinois citizens who fall into the definition of the Class. Ultimately, members of the Class can be easily identified through Defendant's records.

78. **Commonality and Predominance**: Questions of law and fact common to the claims of Plaintiff and the Class predominate over any questions affecting only individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) Whether the Defendant's descriptive URLs that identify whether and what type of genetic test was performed is protected genetic testing information under GIPA;

b) Whether Defendant disclosed that information to Meta or other third parties;

c) Whether Defendant first obtained written authorization from its users (e.g., via its privacy policy) prior to disclosing that information; and

d) Whether Defendant's conduct violates GIPA.

79. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to

13

do so. Neither Plaintiff nor his counsel have any interest adverse to the class.

80.     **Appropriateness**: This class action is appropriate for certification because class proceedings (1) can best secure the economics of time, effort, and expense and promote uniformity of decision, or (2) can accomplish the other ends of equity and justice that class actions seek to obtain. Among other things, the damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief for Defendant's misconduct absent class proceedings. Even if each member of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expenses to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
Violation of 410 ILCS 513
(On Behalf of Plaintiff and the Class)

81.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.     Defendant FamilyTreeDNA is a company and, therefore, a "person" under 410 ILCS 513/10.

83.     Plaintiff and the Class purchased a DNA test or tests from familytreedna.com and viewed the test results on familytreedna.com.

84.     Pursuant to the systemic data sharing process described herein, Defendant disclosed

14

to Meta: (1) the URLs showing that Plaintiff and the Class purchased a DNA test from familytreedna.com; (2) the URLS showing that Plaintiff and the Class completed the genetic test, and, depending on the type of test, the specific type of genetic test performed (*e.g.* a Y-DNA test or an mtDNA test); and (3) Plaintiff's and Class members' Facebook ID.

85.     This information constitutes "genetic testing" and/or "information derived from genetic testing" within the meaning of GIPA because it reveals that a genetic test has been performed. 410 ILCS 513/15.

86.     Separate and independently, this information reveals "identity of any person upon whom a genetic test is performed ... in a manner that permits identification of the subject of the test." 410 ILCS 513/30.

87.     Defendant did not obtain written authorization from Plaintiff or the Class members before disclosing this information to a third-party marketing company. 410 ILCS 513/30(a)(2).

88.     By disclosing this information, Defendant violated Plaintiff's and the Class's statutorily protected rights to privacy in their genetic information as set forth in GIPA. 410 ILCS 513/15 and 30.

89.     Pursuant to 410 ILCS 513/40, "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in a federal district court against an offending party."

90.     Pursuant to 410 ILCS 513/40, a prevailing party may recover for each violation: (1) against any party who negligently violates a provision of GIPA, liquidated damages of $2,500 or actual damages, whichever is greater; (2) against any party who intentionally or recklessly violates a provision of GIPA, liquidated damages of $15,000 or actual damages, whichever is greater; (3) reasonable attorney's fees and costs, including expert witness fees and other litigation expenses;

and (4) such other relief, including an injunction, as the State or federal court may deem appropriate.

91.    On behalf of himself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to remove the Facebook Pixel from its platform and comply with GIPA; (2) actual or statutory damages, in an amount to be proven at trial; and (3) reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Saathoff, individually and on behalf of the Class, respectfully requests that this Court enter an Order:

A.    Certifying the Class as defined above, appointing Plaintiff Joshua Saathoff as the representative of the Class, and appointing his counsel as Class Counsel;

B.    Declaring that Defendant's conduct described herein violates GIPA;

C.    Awarding actual or statutory damages, in a class-wide amount in excess of $50,000 to be proven at trial;

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, among other things, an order requiring Defendant to remove the Facebook Pixel from its platform and comply with GIPA;

E.    Awarding reasonable attorneys' fees and costs; and

F.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Date: Ocotber 18, 2024              Respectfully submitted,

_____

**Nicholas F. Wasdin**
Illinois Bar No. 6310434
DWOSKIN WASDIN LLP
110 N. Wacker Dr., Suite 2500
Chicago, Illinois 60606
(312) 343-5361
nwasdin@dwowas.com

17