**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA SAATHOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-12118 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| GENE BY GENE, LTD., d/b/a FAMILY TREE DNA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR TO TRANSFER VENUE**

Defendant, Gene by Gene, Ltd., d/b/a Family Tree DNA ("Family Tree" or "Defendant") by and through its attorneys, Chuhak & Tecson, P.C., files this Motion to Dismiss for Lack of Personal Jurisdiction, or to Transfer Venue, in response to the putative Class Action Complaint filed by Joshua Saathoff ("Plaintiff" or "Saathoff"), and in support hereof, states as follows:

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff filed a putative class action complaint in the Circuit Court of Cook County, Illinois, against Family Tree on October 18, 2024. A true and correct copy of the Class Action Complaint ("Complaint") is attached hereto as **Exhibit 1**. Based on diversity jurisdiction, Defendant removed the case to this Court.

Illinois courts lack personal jurisdiction over Defendant. Specifically, Family Tree lacks sufficient minimum contacts with the State of Illinois to establish personal jurisdiction. Accordingly, Defendant seeks dismissal of this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Plaintiff accepted Terms of Service in 2018 and 2024 whereby he agreed to the state and

federal courts in Texas as the exclusive venues for any dispute between the parties. Therefore, if the Court determines that it does possess personal jurisdiction over Defendant, then this motion requests transfer of the case to the U.S. District Court for the Southern District of Texas based on 28 U.S.C.A. §1404(a).

## II. STATEMENT OF FACTS

The Complaint alleges that Defendant breached the Illinois Genetic Information Privacy Act ("GIPA") in 2018 when Plaintiff purchased a genetic testing kit "via the Family Tree DNA website." **Ex. 1, ¶72**. Plaintiff does not allege that his genetic information or the testing results were disclosed to a third party. Instead, he alleges that his use of the Family Tree website allowed the identification of Plaintiff as "having requested, purchased and completed a genetic test." **Ex. 1, ¶74**.

Attached hereto as **Exhibit 2** is the Second Declaration of Alexander Zawisza, who serves as the Chief Financial and Administration Officer of Family Tree. Family Tree is a Texas Domestic Limited Partnership with its principal place of business located in Houston, Texas (**Ex. 2, ¶3**.). All of the operations and technology for Family Tree are located in the Houston office. *Id.*, ¶4. Family Tree has no operations in Illinois, and employees of Family Tree are not required to travel to Illinois in order to perform their jobs. *Id.*

Family Tree does not solicit business in Illinois, and Family Tree does not employ any sales representatives in Illinois. *Id.*, ¶6 - ¶10. In addition, Family Tree does not solicit business from Illinois customers, and it has no registered agent in Illinois. *Id*. Family Tree does not maintain bank accounts or own property in Illinois, and it does not direct its activities at the residents of Illinois. *Id.*, ¶7-10.

Family Tree owns and operates a genetic testing laboratory in Houston that allows customers to purchase a DNA kit online, collect DNA samples, and then mail the kit to Houston

for analysis and genetic testing results. *Id.*, ¶11. Thereafter, Family Tree notifies the customer when DNA results are available, and the customer has the opportunity to review those genetic testing results online. *Id.*, ¶13.

Family Tree genetic tests are conducted in compliance with state and federal law. *Id*. Genetic testing results are protected from disclosure through multiple layers of encryption. **Ex. 2**, ¶12.

Family Tree's policies and operational documents are located in the Houston, Texas office. *Id.*, ¶16. If this case is litigated in Illinois, any trial testimony would require Family Tree administrative and technical employees to travel to Illinois, thereby disrupting day to day operations. *Id.*, ¶17. The litigation and trial of this case in Illinois will create a hardship for Family Tree. *Id.*

Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Daniel Au, Chief Information Technology Officer for Family Tree. Plaintiff's allegation that he purchased a genetic testing kit online from Family Tree in 2018 is incorrect. An examination of Family Tree systems data revealed that Plaintiff logged on to the Family Tree website in 2018, and uploaded genetic testing results from a competitor. **Ex. 3**, ¶ 3. Family Tree offers this service free of charge, and accordingly, Plaintiff did not make a payment to Family Tree in 2018 or thereafter. **Ex. 3**, ¶ 5.

In 2018, when Plaintiff utilized the Family Tree website, he was required to agree to the 2017 or 2018 Terms of Service ("2018 TOS"). The 2018 TOS expressly provided that the state and federal courts in Houston, Texas, or arbitration, would be exclusive venues for any dispute between the parties. **Ex. 3A**. Plaintiff agreed to the 2024 Terms of Service ("2024 TOS") when he logged onto the Family Tree website in October of 2024. The 2024 TOS also contained an

express venue selection clause that requires the litigation of any dispute between the parties in Houston, Texas. **Ex. 3C.**

## III. ARGUMENT

### A. Overview of Personal Jurisdiction

The issue of personal jurisdiction turns on whether the Defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945). Where the defendant is not incorporated or headquartered in the foreign state, and the defendant does not conduct its operations in the state, the Court lacks general personal jurisdiction over the Defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2017). In this case, the Court lacks general personal jurisdiction over Family Tree because Defendant is a Texas Domestic Limited Partnership based exclusively in Houston. Ex. 2, ¶3. In addition, Family Tree's operations and laboratory are also contained within the State of Texas.

Plaintiff's only avenue to establish personal jurisdiction must rely upon specific personal jurisdiction. Two conditions are required to establish this type of jurisdiction. First, the Defendant must have purposely availed itself of the privilege of doing business in the foreign state. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the lawsuit must "arise out of or relate to" the defendant's activities by which it purposely availed itself of the foreign state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491

(7th Cir. 2014). Well-plead facts alleged in the complaint are taken as true, and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d at 700. Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

### B. The Facts do not Support a Finding of Personal Jurisdiction

Family Tree is a Texas company with its only place of business located in Houston, Texas. **Ex. 2**, ¶3. The other facts that defeat personal jurisdiction in this case are as follows:

- Family Tree has no operations in Illinois, and employees of Family Tree are not required to travel to Illinois in order to perform their jobs. **Ex. 2**, ¶ 5;
- Family Tree does not solicit business in Illinois, and Family Tree has no sales representatives in Illinois. *Id.*, ¶ 7 and 10.
- Family Tree has no registered agent in Illinois, and it does not maintain bank accounts or own property in Illinois. **Ex. 2**, ¶7-10.
- Family Tree owns and operates a genetic testing laboratory in Houston, Texas so all genetic testing is completed within the State of Texas. **Ex. 2**, ¶14.
- Plaintiff did not purchase a genetic testing kit from Family Tree, instead, he logged on to the Family Tree website and uploaded data from another genetic testing competitor. **Ex. 3**, ¶3.
- Family Tree has verified that Plaintiff has never paid a fee to Family Tree for any

of the services offered by the company. *Id.*, ¶5.

In sum, Family Tree does not direct its activities at customers in Illinois, and generally, Plaintiff cannot satisfy the first prong of specific personal jurisdiction because Family Tree has not purposely availed itself of doing business in Illinois. Plaintiff cites the Illinois Long Arm Statute for the proposition that Family Tree has transacted business within the State of Illinois. **Ex. 1,** ¶ 10; 735 ILCS 5/2-209(a)(1). However, Plaintiff's contention that he purchased a DNA testing kit from Family Tree is incorrect. Instead, Plaintiff utilized the Family Tree site to upload genetic testing data from a competitor to access the Family Tree algorithm and chromosome browser. **Ex. 3**, ¶4. Plaintiff's utilization of Defendant's resources in Houston to upload DNA test results can hardly be characterized as the Defendant's transaction of business in the State of Illinois, merely because Plaintiff was located in Illinois when he accessed Family Tree's website.

The only connection between Plaintiff and Defendant in this case is the Family Tree website. Multiple state and federal courts have addressed the issue of whether a plaintiff's use of the defendant's website is sufficient to establish personal jurisdiction. In the Seventh Circuit, the mere operation of an interactive website is not sufficient to establish personal jurisdiction over the Defendant. Instead, a finding of personal jurisdiction should not be made if the Defendant has not engaged in other activities directed at the subject state. *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 891 (N.D. Ill. 2014). In *Telemedicine*, the court granted defendant's motion to dismiss for lack of *specific* personal jurisdiction, and noted as follows:

> "[I]n cases in which the defendant's alleged contacts with the forum state occurred online, the Seventh Circuit has noted that the relevant inquiry extends beyond simply operating an interactive website that is accessible from the forum state. Instead, the inquiry typically "boils down" to whether the defendant has **purposely exploited or in some way targeted the forum state's market. *be2 LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011). If the defendant merely operates a website, even a 'highly interactive' website, that is**

> **accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.** *Id*." (emphasis added).

*Telemedicine*, 27 F. Supp. 3d at 891.

The holding in *Telemedicine* is fortified by the holding in *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). *Matlin* states in relevant part:

> "In *Hemi Group* 622 F.3d at 760 and other cases, we cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state." *Id*. at 760; *be2 LLC*, 642 F.3d at 558; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). For a court performing a minimum-contacts analysis for [specific] personal jurisdiction purposes, **"[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation."** ***Advanced Tactical Ordnance Sys.*****, 751 F.3d at 801. The record must show that the defendants targeted the forum state.** ***be2 LLC*****, 642 F.3d at 558–59.**"

*Matlin*, 921 F.3d at 706. (emphasis added).

The opinions cited above are on-point with the case at bar. Family Tree operates a website and clinical laboratory exclusively within the confines of Houston, Texas. Family Tree has not assigned any sales representatives to promote business in Illinois and the company has not taken any steps to direct its activities at customers in Illinois. **Ex. 2**, ¶ 10. Without evidence that Family Tree has intentionally promoted business in Illinois by targeting Illinois customers, Plaintiff cannot establish that Family Tree has "purposely availed" itself of the privilege of transacting business in Illinois. Moreover, in this case, Plaintiff did not transact business with Family Tree; he used a free service offered by the site. Plaintiff's conduct cannot establish personal jurisdiction over the Defendant. In this instance, Plaintiff utilized a free opportunity to upload his genetic testing results from a competitor to the Family Tree website. This limited contact with Family Tree in Texas is insufficient to create personal jurisdiction in Illinois.

The Seventh Circuit decision in *Advanced Tactical Ordinance v. Real Action Paintball* merits consideration by the Court, 751 F.3d 796 (7th Cir.2014). In the *Advanced Tactical* case, the court reversed a preliminary injunction entered in favor of the plaintiff and dismissed the case for lack of personal jurisdiction over the defendant. The court noted that personal jurisdiction may not be exercised over the defendant unless "the defendant's suit related conduct" creates a substantial nexus with the forum. *Advanced Tactical*, 751 F.3d at 801. The defendant maintained an email list and sent solicitation emails to potential customers in the forum state (Indiana). *Id.* at 803. Nonetheless, the court decided that the emails sent into Indiana, coupled with an interactive website, were insufficient to establish personal jurisdiction over the defendant.

In making this holding, the court stated:

> The interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that "courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that the defendant is not haled into court simply because the defendant owns and operates a website that is accessible in the forum state, even if that site is interactive.

*Id.*

In the case now before the Court, the only nexus between Family Tree and Illinois is the Defendant's operation of an interactive website that serves customers throughout the United States. The record is bereft of any evidence that Family Tree purposely directed its activities at Illinois residents by sending emails, or any other form of solicitation to market the company's services in Illinois.

Respectfully, the Court should dismiss the case for lack of personal jurisdiction over Defendant.

**C. The Court should Transfer this Action to the U.S. District Court in Texas**

In the event the Court decides that it does possess personal jurisdiction over Family Tree, then the Court should enforce the venue selection clauses contained in the 2018 TOS and the 2024 TOS. The 2017 and 2018 Terms of Service contain the following provision:

> You agree that: (i) the Services shall be deemed solely based in Texas; and (ii) the Services shall be deemed a passive one that does not give rise to personal jurisdiction over Gene by Gene, either specific or general, in jurisdictions other than Texas. This Agreement and any dispute regarding the Services shall be governed by the laws of the State of Texas, USA, without regard to conflict of law provisions and you agree to exclusive personal jurisdiction and venue in the state and federal courts of the United States located in the State of Texas, City of Houston for any actions for which we retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights, as set forth in the Arbitration provision above.

**Ex. 3B**

The foregoing venue selection clause was crafted to work in conjunction with the arbitration provision in the 2018 TOS that requires binding arbitration in Houston, Texas. **Ex. 3B**. Defendant recently demanded that Plaintiff consent to arbitration in Houston, Texas, pursuant to the Federal Arbitration Act, but Plaintiff has not yet had the opportunity to accept or reject that demand. The 2018 TOS plainly mandate either litigation or arbitration in the State of Texas. **Ex. 3B**

The 2024 TOS agreed to by Plaintiff, states as follows:

> All matters relating to the Services and these Terms, and any dispute or claim arising therefrom or related thereto (in each case, including non-contractual disputes or claims), shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

> Any legal suit, action, or proceeding arising out of, or related to, these Terms or the Services shall be instituted exclusively in the federal courts of the United States or the courts of the State of Texas, in each case located in the City of Houston and County of Harris, although we retain the right to bring any suit, action, or proceeding against you for breach of these Terms in your country of residence or any other relevant country. You waive any and all objections to the exercise of jurisdiction over you by such courts and to venue in such courts.

**Ex. 3C.**

Settled law holds that a mandatory forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Schwarz v. Sellers Markets, Inc.,* 812 F. Supp. 2d 932, 936–37 (N.D. Ill. 2011) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 92 S.Ct. 1907 (1972). The Supreme Court construes this exception narrowly. Forum selection clauses are only unreasonable if: (i) their incorporation into the contract was the result of fraud, undue influence or unfair bargaining power; (ii) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (iii) enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Id.* (citing *Bonny v. Soc'y of Lloyd's,* 3 F.3d 156, 160 (7th Cir.1993) (citation and internal quotation marks omitted)).

Federal courts apply this standard equally among contracts regardless of their type. In *Carnival Cruise Lines, Inc. v. Shute,* 111 S.Ct. 1522 (1991), for example, the Supreme Court held that a forum selection clause in a commercial cruise ticket was enforceable.

Here, there is no evidence to suggest that the TOS forum selection clauses are unreasonable under the circumstances. First, the 2018 and 2024 TOS provide clear presentations of the forum selection clauses. Thus, there is no inference of fraud, undue influence or unfair bargaining. *See, Nw. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 377 (7th Cir.1990) ("There was no burial in fine print here…The clause could of course be made even more conspicuous, but

highlighted in this fashion it would throw the other clauses into shadow—inviting litigation over *their* validity.") Saathoff, by assenting to the TOS, had a duty to read its provisions. It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them. *Schwarz,* 812 F. Supp. 2d at 938.

Further, the TOS forum selection clauses, requiring either litigation or arbitration in Houston, Texas, will not make it "so gravely difficult and inconvenient" that Saathoff would be deprived of his day in court. *Schwarz,* 812 F. Supp. at 938. Saathoff had the opportunity to weigh whether the clause would disadvantage him given the claims at stake was when he agreed to the TOS. Thus, "[w]hatever inconvenience" Saathoff would suffer by being forced to litigate in Texas was foreseeable at the time he agreed to the forum selection clauses. *Id*. (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir.2001).

Enforcement of the TOS forum selection clauses would in no way contravene any law or public policy of this Court. Instead, said principles (namely, well-established contract law and the public policies behind it) weigh in favor of enforcing the clause. Saathoff both initiated contact with Family Tree and agreed to the forum selection clauses. Certainly, he was not compelled by any urgent circumstances to upload data to the Family Tree website, and take advantage of a free service. The TOS state that Defendant operates exclusively in Texas, and that its services are thus deemed provided there for venue and jurisdictional purposes. **Ex. 3B and 3C**. Saathoff's decision to access the Family Tree website requires that he abide by the TOS. This requirement, in line with long-standing principles of equity and good conscience, should be upheld.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 942 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

In the Seventh Circuit, the "consideration for which Congress provided in § 1404(a)" has been found to reflect the view set forth by Justice Kennedy's concurrence in *Stewart*, which is that "a valid forum-selection clause is given controlling weight in all but the most exceptional cases." *Id.* at 33 (Kennedy, J., concurring).

As set out in *Atlantic Marine*, a valid forum-selection clause requires district courts to adjust the usual § 1404(a) approach in three ways. *Midwest Biomedical Res., Inc. v. Breas Med., Inc.*, 2021 WL 2072129, at *4 (N.D. Ill. May 24, 2021) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63-65 (2013). First, the plaintiff's choice of forum receives no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id*. Second, the Court does not consider arguments about the parties' private interests; the only relevant factors concern the public interest. *Id.* (internal citations omitted). "[B]ecause those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). Third, a plaintiff who files suit in violation of a forum-selection clause enjoys no "privilege" with respect to the original venue's choice-of-law rules, and therefore it is entitled to no concomitant "state-law advantages." *Atlantic Marine*, 571 U.S. at 65. Not only would it be

inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. *Id*.

When applied to the instant case, the *Atlantic Marine* factors demonstrate that venue is appropriate in Texas as set forth in the TOS forum selection clauses. There is no evidence that the TOS unfairly prejudice Saathoff, or offend any corresponding law or public policy.

This Court granted a motion to transfer venue in *Kelley v. Mill Finance, Inc.*, 436 F. Supp. 3rd 1136 (N.D.IL 2020). The Court relied on an opinion issued by the Supreme Court, which held that "when parties have agreed to a valid forum selection clause, that clause should be given controlling weight in all but the most exceptional cases." *Kelley*, 436 F.Supp. at 1140, quoting *ATL. Marine Construction v. U.S. Dist. Court for the Western District of Texas*, 571 U.S. 49, 64 (2013). Due to the forum selection clauses at issue in this case, the following adjustments should be made to the Court's analysis based on §1404(a):

1. The Plaintiff's choice of forum should not be given any weight;
2. The Court should not consider arguments about the parties' private interests; and
3. The Court should only consider arguments related to public interest factors.

*Kelley*, 436 F.Supp. at 1140.

There are no exceptional circumstances or public interest factors that should prevent the Court from granting Defendant's motion to transfer the case to the Southern District of Texas. To the contrary, even if the Court were to invoke a *forum non-conveniens* analysis, the Southern District of Texas is the appropriate forum for the case. Virtually all of Defendant's administrative and engineering employees who will have to provide deposition and trial testimony related to the case are located in Houston. **Ex. 2, ¶ 17.** The documents, data and technology related to the case are also located in Houston. ***Id.*, ¶18**. If this case were to proceed

to trial, the burden on the Defendant to require multiple employees to travel to Illinois would disrupt the day-to-day operations of Family Tree, and create a hardship for a relatively small company. ***Id.* ¶¶ *20-21.***

## IV. CONCLUSION

Family Tree has not purposely availed itself of the privilege of transacting business in Illinois. To the contrary, Family Tree has operated entirely within the State of Texas, and Plaintiff has failed to establish personal jurisdiction over the Defendant. Accordingly, Defendant respectfully requests the dismissal of this action based on a lack of personal jurisdiction.

In the alternative, Plaintiff agreed to TOS in 2018 and 2024 that contained binding venue selection clauses. If the Court finds that it does possess personal jurisdiction over Defendant, then Defendant requests an order that transfers this case to the U.S. District Court for the Southern District of Texas.

WHEREFORE, Defendant, Gene by Gene, Ltd., d/b/a Family Tree DNA, respectfully requests that the Court grant this motion, dismissing the action for a lack of personal jurisdiction over Defendant, or in the alternative, entering an order that transfers the case to the U.S. District Court for the Southern District of Texas, while the Court grants all other relief which the Court deems just and equitable.

Dated: December 18, 2024

GENE BY GENE LTD, D/B/A FAMILY TREE DNA

By: */s/ David J. Tecson*

David J. Tecson (ARDC No. 6198108)
dtecson@chuhak.com
Daniel J. Fumagalli (ARDC No. 6182648)
dfumagalli@chuhak.com
Adrienne M. Arlan
aarlan@chuhak.com (ARDC No. 6332417)
**CHUHAK & TECSON, PC**
120 S. Riverside Placa, Suite 1700
Chicago, Illinois 60606
Telephone: 312-444-9300
Facsimile: 312-444-9027

**CERTIFICATE OF SERVICE**

I, David J. Tecson, an attorney, hereby certify that on **December 18, 2024**, I electronically filed **DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR TO TRANSFER VENUE,** with the U.S. District Court for the Northern District of Illinois, Eastern Division's CM/ECF system, which will send electronic notification of this filing to the parties as set forth above.

*/s/ David J. Tecson*