**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA SAATHOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-12118 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| GENE BY GENE, LTD., d/b/a FAMILY TREE DNA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, COMPEL ARBITRATION OR TRANSFER VENUE**

Defendant, Gene by Gene, Ltd., d/b/a Family Tree DNA ("FT" or "Defendant") by and through its attorneys, Chuhak & Tecson, P.C., files this Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction, Compel Arbitration or Transfer Venue, in response to the Amended Class Action Complaint filed by Joshua Saathoff ("Plaintiff" or "Saathoff"), and in support hereof, states as follows:

## I. INTRODUCTION

The Amended Class Action Complaint ("Complaint", attached hereto as **Exhibit 1**) alleges that FT violated the Illinois Genetic Information Privacy Act ("GIPA") by disclosing that Plaintiff interacted with the FT website to third parties. However, FT lacks sufficient minimum contacts with Illinois to establish personal jurisdiction. FT therefore seeks dismissal of this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Plaintiff accepted FT's Terms of Service ("TOS") in 2018 ("2018 TOS"), which contain a binding arbitration clause. FT has demanded arbitration, and Plaintiff has not accepted the demand. FT respectfully requests an order that compels arbitration, if the Court determines that it does possess personal jurisdiction over the Defendant.

FT amended its TOS in April of 2024 and notified all customers that the TOS had been revised ("2024 TOS"). The 2024 TOS contains a clause that mandates the state and federal courts of Houston, Texas, as the exclusive venues for all litigation between the Parties. The 2024 TOS also provide FT with the option of submitting the dispute to binding arbitration. Accordingly, if the Court finds that the 2024 TOS govern this dispute, but declines to enforce the arbitration provision, then FT respectfully moves for transfer of the case to the U.S. District Court for the Southern District of Texas, pursuant to 28 U.S.C.A. §1404(a).

## II. STATEMENT OF FACTS

Plaintiff does not allege that his genetic information or testing results were disclosed to a third party. Instead, he alleges that his use of the FT website disclosed his alleged purchase of a DNA test by transmitting information to Meta and Google. **Ex. 1, ¶ 130**.

Attached hereto as **Exhibit 2** is the Third Declaration of Alexander Zawisza, who serves as the Chief Financial and Administration Officer of FT, a Texas Domestic Limited Partnership with its principal place of business located in Houston. (**Ex. 2, ¶ 3**.). All of the operations and technology for FT are located in the Houston office. ***Id.***, **¶ 4**. FT has no operations in Illinois, and employees of FT are not required to travel to Illinois in order to perform their jobs. ***Id, par. 6.*** FT does not solicit business in Illinois, and FT does not employ any sales representatives in Illinois. ***Id.,* ¶ 6 - ¶ 10**. In addition, FT does not solicit business from Illinois customers, and it has no registered agent in Illinois. ***Id.*** FT does not maintain bank accounts or own property in Illinois, and it does not direct its activities at the residents of Illinois. ***Id.,* ¶¶ 7-11**.

FT owns and operates a genetic testing laboratory in Houston that allows customers to purchase a DNA kit online, collect DNA samples, and then mail the kit to Houston for analysis and genetic testing results. ***Id.,* ¶ 16**. FT genetic tests are conducted in compliance with state and federal law. ***Id.* ¶ 19**. Genetic testing results are protected from disclosure through multiple layers

of encryption. ***Id***. FT policies and operational documents are located in the Houston, Texas office. ***Id*., ¶ 22**. If this case is litigated in Illinois, any trial testimony would require FT administrative and technical employees to travel to Illinois, thereby disrupting operations. ***Id*., ¶ 23-24**. The litigation and trial of this case in Illinois will create an undue hardship for FT. ***Id.***

Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Daniel Au, Chief Information Technology Officer for FT. Plaintiff's allegation that he purchased a genetic testing kit online from FT in 2018 is incorrect. **Ex. 3**, **¶ 3.** An examination of FT systems data revealed that Plaintiff logged on to the FT website in 2018, and uploaded genetic testing results from a competitor. ***Id***. FT offers this service free of charge, and accordingly, Plaintiff did not make a payment to FT in 2018 or thereafter. **Ex. 3**, **¶ 5**.

In 2018, when Plaintiff utilized the FT website, he was required to agree to the 2017 or 2018 Terms of Service ("2018 TOS"). **Ex. 3A**. In order to create an account in 2018, the FT website required plaintiff to click on an icon which stated "Join Now", and advised Plaintiff that if he decided to create an account, he expressly agreed to the 2018 TOS. **Group Ex. 3B**; **Ex. 3C**.

In April of 2024, FT sent an email to all customers notifying them that FT had amended the applicable TOS. **Ex. 3, par. 11.** The 2024 TOS contained a venue selection clause that requires the litigation of any dispute between the parties in Houston, Texas, and also provided FT with the option of demanding binding arbitration. **Ex. 3D.**

## III. ARGUMENT

### A. Overview of Personal Jurisdiction

Personal jurisdiction may only be found where a party has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be general or specific in nature. *Id*. Where the defendant is not

incorporated or headquartered in the foreign state, and the defendant does not conduct its operations in the state, the Court lacks general personal jurisdiction over the Defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2017). In this case, the Court lacks general personal jurisdiction over FT because Defendant is a Texas entity based exclusively in Houston. **Ex. 2**, **¶ 3**.

Plaintiff must therefore establish specific personal jurisdiction based on a two-prong analysis. First, Defendant must have purposely availed itself of the privilege of doing business in Illinois. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the lawsuit must "arise out of or relate to" the defendant's activities by which it purposely availed itself transacting business in the foreign state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Well-plead facts alleged in the complaint are taken as true, and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)).

### B. The Facts do not Support Specific Personal Jurisdiction

In an effort to create a basis for personal jurisdiction, Plaintiff alleges multiple incorrect statements, as follows: (i) FT advertised its services in Illinois; (ii) FT "installed tracking technology" on Plaintiff's computer in Illinois; and, (iii) Plaintiff's computer disseminated Plaintiff's genetic testing information to third parties from Illinois. **Ex. 1**, **p. 3 ¶ 10**. The Declarations submitted by FT demonstrate that FT does not publish or disseminate any advertising specifically designed to generate customers in Illinois (**Ex. 2, ¶ 12**), FT did not install tracking technologies on Plaintiff's computer in Illinois, and FT did not cause any information to be sent from Plaintiff's computer in Illinois to third parties. **Ex. 3, ¶ 7**). In actuality, the only nexus between Plaintiff and Defendant in this case arises out of Plaintiff's voluntary decision to utilize FT's website and genetic testing laboratory located in Houston, Texas.

The additional facts that defeat personal jurisdiction are as follows:

- FT is a Texas company with its only place of business located in Houston, Texas. **Ex. 2**, **¶ 3**.
- FT's genetic testing laboratory and corresponding operations are in Houston, Texas. **Ex. 2**, **¶ 4**.
- FT does not operate in Illinois or send employees to Illinois to perform their job duties. **Ex. 2**, **¶ 4**, **6**.
- FT does not market, advertise or otherwise solicit business in Illinois, or have sales representatives in Illinois. ***Id.*, ¶¶ 7-8, 10-11, 14**.
- FT has no registered agent, bank accounts or property in Illinois. **Ex. 2**, **¶ 9-10**.

Further, Plaintiff's contention that he purchased a DNA testing kit from FT is incorrect. Plaintiff utilized the FT site to upload genetic testing data from a competitor to access the FT

algorithm and chromosome browser. **Ex. 3**, **¶ 4**. FT has verified that Plaintiff has never purchased a test kit from FT or paid FT for any services. ***Id.*, ¶¶ 3, 5**. Plaintiff's utilization of Defendant's resources in Houston, to upload DNA test results, can hardly be characterized as the Defendant's transaction of business in the State of Illinois, merely because Plaintiff was located in Illinois when he accessed FT's website.

Plaintiff also argues that his receipt of emails from FT establishes that FT targeted him in Illinois. Plaintiff fails to mention, however, that emails from FT post-date his creation of an account in 2018. FT does not send marketing emails to Illinois residents in an effort to generate business in Illinois. **Ex. 2, ¶ 14.** With respect to Plaintiff, FT did not send emails to him until after he took the initiative to create an account with FT in April of 2018. FT's emails—*sent in response* to Plaintiff's interaction with its website—fail to demonstrate that FT targeted customers in Illinois. FT's website and services are available to residents throughout the U.S. and multiple foreign countries. **Ex. 2, ¶ 12.** Because FT does not purposely avail itself of the privilege of transacting business in Illinois, the revenue generated by Illinois customers from 2018-2023 was less than 3% of Defendant's total revenue. ***Id.*, ¶ 13.**

As described in the Second Declaration of Daniel Au, Plaintiff expressly agreed to the 2018 TOS by clicking an icon labeled "Join Now" which notified Plaintiff that by clicking on the icon he would be agreeing to the FT TOS in effect at that time. Generally, federal courts enforce online agreements so long as the website presents the consumer with a realistic opportunity to review the terms of service, and include a physical manifestation of assent. *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012)

In the Seventh Circuit, the operation of an interactive website is not sufficient to establish personal jurisdiction over the defendant. Instead, a finding of personal jurisdiction should not be made if the defendant has not engaged in other activities directed at the subject state. *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 891 (N.D. Ill. 2014). In *Telemedicine*, the court granted defendant's motion to dismiss for lack of *specific* personal jurisdiction, reasoning as follows:

> "[I]n cases in which the defendant's alleged contacts with the forum state occurred online, the Seventh Circuit has noted that the relevant inquiry extends beyond simply operating an interactive website that is accessible from the forum state. Instead, the inquiry typically "boils down" to whether the defendant has **purposely exploited or in some way targeted the forum state's market. *be2 LLC v. Ivanov*, 642 F.3d 555, 558-559 (7th Cir. 2011). If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.** *Id*." (emphasis added).

*Telemedicine*, 27 F. Supp. 3d at 891.

The holding in *Telemedicine* is fortified by the holding in *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). *Matlin* states in relevant part:

> "In *Hemi Group* and other cases, we cautioned that courts [']should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state.[' *Illinois v. Hemi Group LLC, 622 F.3d 754, 760 (7th Cir. 2010)]*; *be2 LLC*, 642 F.3d at 558; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). For a court performing a minimum-contacts analysis for [specific] personal jurisdiction purposes, **"[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801. The record must show that the defendants targeted the forum state. *be2 LLC*, 642 F.3d at 558–59.**"

*Matlin*, 921 F.3d at 706 (emphasis added).

The opinions cited above are on-point with the case at bar. FT operates a website and clinical laboratory exclusively within the confines of Houston. FT has not assigned any sales representatives to promote business in Illinois and the company has not taken any steps to direct

its activities at customers in Illinois. **Ex. 2, ¶ 11**. Without evidence that FT has intentionally promoted business in Illinois, Plaintiff cannot establish that FT has "purposely availed" itself of the privilege of transacting business in Illinois by virtue of its website. Plaintiff initiated contact with FT by creating an account with FT in Texas. This limited contact with FT in Texas is insufficient to create personal jurisdiction in Illinois.

The Seventh Circuit decision in *Advanced Tactical Ordinance v. Real Action Paintball,* 751 F.3d 796 (7th Cir.2014), merits consideration by the Court on this issue. In *Advanced Tactical*, the court reversed a preliminary injunction entered in favor of the plaintiff and dismissed the case for lack of personal jurisdiction over the defendant. The court noted that personal jurisdiction may not be exercised over the defendant unless "the defendant's suit-related conduct" creates a substantial nexus with the forum. *Advanced Tactical,* 751 F.3d at 801. The defendant maintained an email list and sent solicitation emails to potential customers in the forum state (Indiana). *Id.* at 803. Nonetheless, the court decided that the emails sent into Indiana, coupled with an interactive website, were insufficient to establish personal jurisdiction over the defendant.

In making this holding, the court maintained that:

> "[t]he interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that "courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that the defendant is not haled into court simply because the defendant owns and operates a website that is accessible in the forum state, even if that site is interactive."

*Id.*

Plaintiff attempts to avoid this well-established precedent via allegations concerning the FT website's use of cookies and pixels. In short, Plaintiff argues that Google cookies and/or Meta pixels generated by his use of FT's website, amounts to the physical alteration of Plaintiff's

computer, sufficient to confer specific personal jurisdiction over FT in Illinois (**Ex. 1**, **¶¶ 10, 14, 17, 71, 76-77**). Plaintiff's argument is at odds with logic. Further, the Complaint is devoid of factual allegations showing that Plaintiff's own deployment of FT's website from Illinois, amounts to FT's presence in Illinois.

Indeed, Plaintiff's Complaint contradicts itself on this point by alleging that the any "tracking technology" specific to a website is actually installed on that website's servers. **Ex. 1**, **¶ 14**. Thus, according to Plaintiff, the only alleged connection to Meta or Google, to the extent any exists, is on FT's systems, located in Houston, Texas. **Ex. 2**, **¶ 4**.

The record is bereft of any evidence that FT purposely availed itself of the opportunity to conduct business in Illinois. Respectfully, for the reasons provided above, the Court should dismiss this case for lack of personal jurisdiction over FT.

### C. The Case should be Submitted to Binding Arbitration

The 2018 TOS provided that if any dispute related to the services provided by FT cannot be resolved, the Parties expressly agreed to "binding Arbitration by the American Arbitration Association (AAA) in the city of Houston, Texas under the commercial rules then in effect for the AAA, except as provided herein." **Group Ex. 3B pp. 8; 11**. The only exception to mandatory arbitration was a carve out for FT to seek injunctive relief in order to protect proprietary interests. ***Id***. Plaintiff alleges that Defendant violated GIPA in the year 2018, accordingly, the 2018 TOS should logically apply to any dispute between the Parties.

The record confirms that Plaintiff agreed to the 2018 TOS when he created his account in April of 2018. In order to create his account and utilize the FT website, Plaintiff had to click on an icon which stated "Join Now", which notified him that by clicking on the icon he would be agreeing to the 2018 TOS. **Ex. 3, ¶ 10; Ex. 3C.** The sequence of events is similar to the sign-on

process used in *Fteja v. Facebook, Inc.* 841 F.Supp.2d 829 (S.D.N.Y. 2012). In that case, the court enforced the terms of service because the existence of the terms was reasonably communicated to the user. *Id. at 838.*

In April of 2024, FT sent an email to Plaintiff and all users of the website notifying them that the Terms of Service had been amended. **Ex. 3D** is copy of the April 11, 2024, notification email and 2024 TOS, which provides FT with the option of demanding Arbitration. **Ex. 3D**. Accordingly, both the 2018 TOS and the 2024 TOS support Defendant's request for an order that compels Arbitration.

The Federal Arbitration Act (FAA) reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S.1, 24 (1983). The FAA supports "the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Communications, LLC,* 666 F3d. 1027, 1032-1033 (7th Cir. 2012). Federal cases should be stayed or dismissed, and the Court should issue an order compelling arbitration when one of the Parties refuses to comply with an arbitration agreement. *EEOC v. Waffle House, Inc.,* 534 U.S.279, 2889 (2002). Unless the court identifies procedural or substantive terms that are unconscionable, the court should order arbitration and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Sanchez v. Clean Net USA, Inc.,* 78 F.Supp.3d 747, 753 (N.D. Ill. 2015).

### D. If the Court does not Compel Arbitration, the Case should be Transferred

If the Court does not enforce the arbitration clauses, then the Court should enforce the venue selection clause contained in 2024 TOS.

The 2024 TOS states as follows:

> All matters relating to the Services and these Terms, and any dispute or claim arising therefrom or related thereto (in each case, including non-contractual disputes or claims), shall be governed by and construed in accordance with the

> internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction). Any legal suit, action, or proceeding arising out of, or related to, these Terms or the Services shall be instituted exclusively in the federal courts of the United States or the courts of the State of Texas, in each case located in the City of Houston and County of Harris, although we retain the right to bring any suit, action, or proceeding against you for breach of these Terms in your country of residence or any other relevant country. You waive any and all objections to the exercise of jurisdiction over you by such courts and to venue in such courts.

**Ex. 3D.**

Settled law holds that a mandatory forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Schwarz v. Sellers Markets, Inc.,* 812 F. Supp. 2d 932, 936–37 (N.D. Ill. 2011) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 92 S.Ct. 1907 (1972). The Supreme Court construes this exception narrowly. Forum selection clauses are only unreasonable if: (i) their incorporation into the contract was the result of fraud, undue influence or unfair bargaining power; (ii) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (iii) enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Id*. (citing *Bonny v. Soc'y of Lloyd's,* 3 F.3d 156, 160 (7th Cir.1993) (citation and internal quotation marks omitted)).

Federal courts apply this standard equally among contracts regardless of their type. In *Carnival Cruise Lines, Inc. v. Shute*, 111 S. Ct. 1522 (1991), for example, the Supreme Court held that a forum selection clause in a commercial cruise ticket was enforceable. *Id.*

Here, there is no evidence to suggest that the TOS forum selection clauses are unreasonable under the circumstances. First, the 2018 and 2024 TOS provide clear presentations of the forum selection clauses. Thus, there is no inference of fraud, undue influence or unfair bargaining. *See*, *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir.1990) ("There was no

burial in fine print here…The clause could of course be made even more conspicuous, but highlighted in this fashion it would throw the other clauses into shadow—inviting litigation over *their* validity.") Saathoff, by assenting to the TOS, had a duty to read its provisions. It is a fundamental principle of contract law that a person who signs a contract is presumed to know it's terms and consents to be bound by them. *Schwarz*, 812 F. Supp. 2d at 938.

Further, the TOS forum selection clauses, requiring either litigation or arbitration in Houston, Texas, will not make it "so gravely difficult and inconvenient" that Saathoff would be deprived of his day in court. *Schwarz*, 812 F. Supp. at 938. Saathoff had the opportunity to weigh whether the clause would disadvantage him given the claims at stake was when he agreed to the TOS. Thus, "[w]hatever inconvenience" Saathoff would suffer by being forced to litigate in Texas was foreseeable at the time he agreed to the forum selection clauses. *Id*. (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir.2001).

Enforcement of the TOS forum selection clauses would in no way contravene any law or public policy of this Court. Instead, said principles (namely, well-established contract law and the public policies behind it) weigh in favor of enforcing the clause. Saathoff both initiated contact with FTand agreed to the forum selection clauses. Certainly, he was not compelled by any urgent circumstances to upload data to the FT website, and take advantage of a free service. The TOS state that Defendant operates exclusively in Texas, and that its services are thus deemed provided there for venue and jurisdictional purposes. **Group Ex. 3B**. Saathoff's decision to access the FT website requires that he abide by the TOS. This requirement, in line with long-standing principles of equity and good conscience, should be upheld.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ..., but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

In the Seventh Circuit, the "consideration for which Congress provided in § 1404(a)" has been found to reflect the view set forth by Justice Kennedy's concurrence in *Stewart*, which is that "a valid forum-selection clause is given controlling weight in all but the most exceptional cases." *Id.* at 33 (Kennedy, J., concurring).

As set out in *Atlantic Marine*, a valid forum-selection clause requires district courts to adjust the usual § 1404(a) approach in three ways. *Midwest Biomedical Res., Inc. v. Breas Med., Inc.*, 2021 WL 2072129, at *4 (N.D. Ill. May 24, 2021) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63-65 (2013). First, the plaintiff's choice of forum receives no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id*. Second, the Court does not consider arguments about the parties' private interests; the only relevant factors concern the public interest. *Id.* (internal citations omitted). "[B]ecause those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). Third, a plaintiff who files suit in violation of a forum-selection clause enjoys no "privilege" with respect to the original venue's choice-of-law rules, and therefore it is entitled to no concomitant "state-law advantages." *Atlantic Marine*, 571 U.S. at 65. Not only would it be

inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. *Id*.

When applied to the instant case, the *Atlantic Marine* factors demonstrate that venue is appropriate in Texas as set forth in the TOS forum selection clauses. There is no evidence that the TOS unfairly prejudice Saathoff, or offend any corresponding law or public policy.

This Court granted a motion to transfer venue in *Kelley v. MailFinance, Inc.*, 436 F. Supp. 3rd 1136 (N.D. Ill. 2020). The Court relied on an opinion issued by the Supreme Court, which held that "when parties have agreed to a valid forum selection clause, that clause should be given controlling weight in all but the most exceptional cases." *Kelley*, 436 F.Supp. at 1140, quoting *ATL. Marine Construction v. U.S. Dist. Court for the Western District of Texas*, 571 U.S. 49, 64 (2013). Due to the forum selection clauses at issue in this case, the following adjustments should be made to the Court's analysis based on §1404(a):

1. The Plaintiff's choice of forum should not be given any weight;
2. The Court should not consider arguments about the parties' private interests; and
3. The Court should only consider arguments related to public interest factors.

*Kelley*, 436 F.Supp. at 1140.

There are no exceptional circumstances or public interest factors that should prevent the Court from granting Defendant's motion to transfer the case to the Southern District of Texas. To the contrary, even if the Court were to invoke a *forum non-conveniens* analysis, the Southern District of Texas is the appropriate forum for the case. Virtually all of Defendant's administrative and engineering employees who will have to provide deposition and trial testimony related to the case are located in Houston. **Ex. 2, ¶ 20**. The documents, data and technology related to the case are also located in Houston. ***Id.*, ¶ 21**. If this case were to proceed

to trial, the burden on the Defendant to require multiple employees to travel to Illinois would disrupt the day-to-day operations of FT, and create severe and undue hardship for a relatively small company. ***Id.* ¶¶ 23-24**.

## IV. CONCLUSION

FT has not purposely availed itself of the privilege of transacting business in Illinois. To the contrary, FT has operated entirely within the State of Texas, and Plaintiff has failed to establish personal jurisdiction over the Defendant. Accordingly, Defendant respectfully requests the dismissal of this action based on a lack of personal jurisdiction.

In the alternative, Plaintiff agreed to TOS in 2018 and 2024 that contained binding arbitration and class action waiver clauses. If the Court finds that it does possess personal jurisdiction over Defendant, then Defendant requests an order that compels arbitration. IN the alternative, the case should be transferred to the U.S. District Court for the Southern District of Texas.

WHEREFORE, Defendant, Gene by Gene, Ltd., d/b/a Family Tree DNA, respectfully requests that the Court grant this motion, dismissing the action for a lack of personal jurisdiction over Defendant, or in the alternative, entering an order compels arbitration, or that transfers the case to the U.S. District Court for the Southern District of Texas, while the Court grants all other relief which the Court deems just and equitable.

Respectfully submitted,

GENE BY GENE LTD., D/B/A
FAMILY TREE DNA

Date: January 29, 2025

By:*/s/ David J. Tecson*

David J. Tecson (ARDC No. 6198108)
dtecson@chuhak.com
Daniel J. Fumagalli (ARDC No. 6182648)
dfumagalli@chuhak.com
Adrienne M. Arlan
aarlan@chuhak.com (ARDC No. 6332417)
**CHUHAK & TECSON, PC**
120 S. Riverside Placa, Suite 1700
Chicago, Illinois 60606
Telephone: 312-444-9300
Facsimile: 312-444-9027

## CERTIFICATE OF SERVICE

I, David J. Tecson, an attorney, hereby certify that on **January 29, 2025,** I electronically filed **DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR TO TRANSFER VENUE,** with the U.S. District Court for the Northern District of Illinois, Eastern Division's CM/ECF system, which will send electronic notification of this filing to the parties as set forth above.

*/s/ David J. Tecson*