**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MELISSA NEBLOCK and LUCINDA ODEA, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 1:24-cv-12118 |
| v. | ) | Honorable Judge Manish S. Shah |
| GENE BY GENE, LTD., d/b/a FAMILYTREEDNA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK**
**OF PERSONAL JURISDICTION, COMPEL ARBITRATION OR TRANSFER VENUE**

Defendant, Gene by Gene, Ltd., d/b/a FamilyTreeDNA ("FT" or "Defendant") by and through its attorneys, Chuhak & Tecson, P.C., files this Motion to Dismiss for Lack of Personal Jurisdiction, Compel Arbitration or Transfer Venue, in response to the Consolidated Class Action Complaint (Doc. #: 32, "Complaint") filed by Melissa Neblock ("Plaintiff" or "Neblock") and Lucinda Odea ("Plaintiff" or "Odea", collectively Neblock and Odea shall be referred to as "Plaintiffs") and in support hereof, states as follows:

## I. INTRODUCTION

The Complaint (attached hereto as **Exhibit 1**) incorrectly alleges that FT violated the Illinois Genetic Information Privacy Act ("GIPA") by disclosing Plaintiffs' genetic testing information to third parties. Setting aside the inaccuracy of the Complaint, FT lacks sufficient minimum contacts with Illinois to sustain personal jurisdiction. FT therefore seeks dismissal of this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

If the Court determines that it does possess personal jurisdiction over Defendant, then FT respectfully requests an order that compels arbitration based on arbitration clauses that Neblock

and Odea accepted. Each Plaintiff accepted FT's Terms of Service ("TOS") in 2017 ("2017 TOS"), which contained a binding arbitration clause. FT has demanded arbitration, and Plaintiffs have rejected the demand.

If the Court finds it possesses personal jurisdiction over FT, and declines to enforce the arbitration provision, then FT moves for transfer of the case to the Southern District of Texas, pursuant to 28 U.S.C.A. §1404(a).

## II. STATEMENT OF JURISDICTIONAL FACTS

Plaintiffs allege that their genetic testing information was disclosed by FT to Facebook and Google. **Ex. 1, ¶ 3**. The Complaint alleges that the unauthorized disclosures of genetic testing information occurred because FT installed third party tracking tools (such as pixels) "on its website" in Houston, Texas, causing the transfer of data to Google and Facebook. **Ex. 1, ¶ 8.**

In an effort to establish personal jurisdiction, Plaintiffs allege that FT "regularly conducts business" in Illinois and FT has advertised and sold genetic test kits to consumers in Illinois. **Ex. 1, ¶ 33**. Plaintiffs also allege that FT committed tortious acts in Illinois, and otherwise made or established contacts with Illinois. *Id.* **¶ 34**.

Attached hereto as **Exhibit 2** is the Declaration of Alexander Zawisza, who serves as the Chief Financial and Administration Officer of FT, a Texas Domestic Limited Partnership with its principal place of business located in Houston. (**Ex. 2, ¶ 3**). The genetic testing results of FT customers are effectively protected from disclosure by multiple layers of encryption, and there is no evidence that the Plaintiffs' genetic testing results were disclosed to unauthorized third parties. **(Ex. 2, ¶ 17).** All of the operations and technology for FT are located in the Houston office. (***Id.***, **¶ 4)**. FT has no operations in Illinois, and employees of FT are not required to travel to Illinois in order to perform their jobs. (***Id*, ¶ 6*).*** FT does not solicit business in Illinois, and FT does not employ any sales representatives in Illinois. (***Id.*, ¶¶ 6 – 10)**. In addition, FT

does not solicit business from Illinois customers, and it has no registered agent in Illinois. (***Id.***) FT does not maintain bank accounts or own property in Illinois, and it does not direct its activities at the residents of Illinois. (***Id.*, ¶¶ 7-11**).

FT owns and operates a genetic testing laboratory in Houston that allows customers to purchase a DNA kit online, collect DNA samples, and then mail the kit to Houston for analysis and genetic testing results. (***Id.*, ¶ 16**). FT genetic tests are conducted in compliance with state and federal law. (***Id.* ¶ 17**). FT policies and operational documents are located in the Houston office. (***Id.* ¶ 19-20**). If this case is litigated in Illinois, any trial testimony would require FT administrative and technical employees to travel to Illinois, thereby disrupting operations. (***Id.* ¶ 21**). The litigation and trial of this case in Illinois will create an undue hardship for FT. (***Id.* ¶ 22**)**.**

Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Daniel Au, Chief Information Technology Officer for FT. The engineering team at FT investigated Neblock's and Odea's allegations, and reviewed data regarding Neblock's and Odea's use of the Family Tree website and genetic matching technology. **(Ex. 3, ¶ 2).** Neblock first used the Family Tree website in 2015, but she did not purchase a kit using the 2015 account. **(*Id.*, ¶ 5).** Neblock created a second Family Tree account on February 10, 2017, and ordered a genetic test for what appears to be a male individual. **(*Id.*, ¶ 6).** Attached to the Daniel Au Declaration as **Exhibit 3A** is a copy of Neblock's 2017 account information. Odea's account records indicate that she opened her Family Tree account on July 22, 2017. **(*Id.*, ¶ 4).** Attached to the Daniel Au Declaration as **Exhibit 3B** is a copy of Odea's 2017 account information.

In order to create an account with Family Tree in 2017, Neblock and Odea were required to agree to the 2017 TOS, attached to the Daniel Au Declaration as **Exhibit 3C**. The FT website

required Neblock and Odea to agree to the 2017 TOS by clicking a box which stated "I agree", or that the user agreed to "Accept Terms". FT notified Neblock and Odea that by clicking on the icons, they agreed to the TOS. **Exhibit 3D** is a screen shot of the image that was presented to Neblock when she agreed to the 2017 TOS as part of the account creation process at Family Tree, and attached as **Exhibit 3E** is a screen shot of the image that was presented to Odea when she agreed to the 2017 TOS as part of the account creation process. (**Ex. 3, ¶ 10**).

## III. ARGUMENT

### A. Overview of Personal Jurisdiction

Personal jurisdiction may only be found where a party has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be general or specific in nature. *Id*. Where the defendant is not incorporated or headquartered in the foreign state, and the defendant does not conduct its operations in the state, the court lacks general personal jurisdiction over the Defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2017). In this case, the Court lacks general personal jurisdiction because FT is a Texas entity based exclusively in Houston. **Ex. 2**, **¶ 3**.

Plaintiffs must therefore establish specific personal jurisdiction based on a two-prong analysis. First, Defendant must have purposely availed itself of the privilege of doing business in Illinois. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the lawsuit must "arise out of or relate to" the defendant's activities by which it purposely availed itself of transacting business in the foreign state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F.

Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Well-plead facts alleged in the complaint are taken as true, and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)).

**B. The Facts Do Not Support Specific Personal Jurisdiction**

In an effort to create a basis for personal jurisdiction, Plaintiffs allege the following incorrect statements: (i) FT conducts business in Illinois; (ii) FT "advertised and sold" testing kits in Illinois; (iii) FT "committed tortious acts" in Illinois; and, (iv) FT "established contacts" in Illinois. **Ex. 1**, **¶ 33-34**. In reality, the only nexus between Plaintiffs and Defendant arises out of Plaintiff's voluntary decision to utilize FT's website and genetic testing laboratory located in Houston, Texas. Other than hosting an interactive website located in Texas, FT did nothing to generate customer relationships with Plaintiffs.

The additional facts that defeat personal jurisdiction are as follows:

- FT is a Texas company with its only place of business located in Houston, Texas. **Ex. 2**, **¶ 3**.
- FT's genetic testing laboratory, website servers and corresponding operations are in Houston, Texas. **Ex. 2**, **¶ 4**.
- FT does not operate in Illinois, or send employees to Illinois to perform their job

duties. **Ex. 2**, ¶ **4**, **6**.

- FT is not registered to do business in Illinois. **Ex. 2, ¶ 7**.
- FT does not market, advertise or otherwise solicit business in Illinois, or have sales representatives in Illinois. ***Id*, ¶¶ 8, 11**.
- FT has no registered agent, bank accounts or property in Illinois. **Ex. 2**, ¶ **9-10**.
- FT does not send marketing emails to Illinois specifically designed to generate new customers in Illinois, or use the U.S. mail service for the delivery of marketing publications in Illinois. **Id, ¶ 14.**
- FT revenue generated by Illinois customers from 2018-2023 was less than 3% of the company's total revenue. **Id, ¶ 13-14.**

Plaintiffs' utilization of Defendant's resources in Houston can hardly be characterized as the Defendant's transaction of business in Illinois, merely because Plaintiffs were located in Illinois when they accessed FT's website. FT's website and services are available to residents throughout the U.S. and multiple foreign countries. **Ex. 2, ¶ 13.** Because FT does not purposely avail itself of the privilege of transacting business in Illinois, the revenue generated by Illinois customers from 2018-2023 was less than 3% of Defendant's total revenue. ***Id*., ¶ 14.**

As described in the Declaration of Daniel Au, Plaintiffs expressly agreed to the 2017 TOS by clicking on icons labeled "I agree", or "Accept Terms", which notified Plaintiffs that by clicking on the icon they would be agreeing to the FT TOS in effect at that time. The 2017 TOS expressly state: "(i) the Services shall be deemed solely based in Texas; and (ii) the Services shall be deemed a passive one that does not give rise to personal jurisdiction over Gene by Gene, either specific or general, in jurisdictions other than Texas." **Ex. 3C, p. 10**. These contractual terms recite the jurisdictional status between the parties, and Plaintiffs agreed that the only courts

that would have personal jurisdiction over FT would be Texas courts. The Court should enforce these terms. Generally, federal courts enforce online agreements so long as the website presents the consumer with a realistic opportunity to review the terms of service, and include a physical manifestation of assent. *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012)

In the Seventh Circuit, the operation of an interactive website is not sufficient to establish personal jurisdiction over the defendant. Instead, a finding of personal jurisdiction should not be made if the defendant has not engaged in other activities directed at the subject state. *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 891 (N.D. Ill. 2014). In *Telemedicine*, the court granted defendant's motion to dismiss for lack of specific personal jurisdiction, reasoning as follows:

> "[I]n cases in which the defendant's alleged contacts with the forum state occurred online, the Seventh Circuit has noted that the relevant inquiry extends beyond simply operating an interactive website that is accessible from the forum state. Instead, the inquiry typically "boils down" to whether the defendant has **purposely exploited or in some way targeted the forum state's market. *be2 LLC v. Ivanov,* 642 F.3d 555, 558-559 (7th Cir. 2011). If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.** *Id*." (emphasis added).

*Telemedicine*, 27 F. Supp. 3d at 891.

The holding in *Telemedicine* is fortified by the holding in *Matlin v. Spin Master Corp.,* 921 F.3d 701, 706 (7th Cir. 2019). *Matlin* states in relevant part:

> "In *Hemi Group* and other cases, we cautioned that courts [']should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state.[' *Illinois v. Hemi Group LLC, 622 F.3d 754, 760 (7th Cir. 2010)]*; *be2 LLC*, 642 F.3d at 558; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). For a court performing a minimum-contacts analysis for [specific] personal jurisdiction purposes, **"[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys.,* 751 F.3d at 801. The record must show that the defendants targeted the forum state. *be2 LLC,* 642 F.3d at 558–59.**"

*Matlin*, 921 F.3d at 706 (emphasis added).

The opinions cited above are on-point with the case at bar. FT operates a website and clinical laboratory exclusively within the confines of Houston. FT has not assigned any sales representatives to promote business in Illinois, and the company has not taken any steps to direct its activities at customers in Illinois. **Ex. 2**, **¶ 11**. Without evidence that FT has intentionally promoted business in Illinois, Plaintiffs cannot establish that FT has "purposely availed" itself of the privilege of transacting business in Illinois by virtue of its website. Plaintiffs initiated contact with FT by creating accounts with FT in Texas. This limited, online contact with FT in Texas is insufficient to create personal jurisdiction in Illinois.

The Seventh Circuit decision in *Advanced Tactical Ordinance v. Real Action Paintball,* 751 F.3d 796 (7th Cir. 2014), merits consideration by this Court. In *Advanced Tactical*, the court reversed a preliminary injunction entered in favor of the plaintiff and dismissed the case for lack of personal jurisdiction over the defendant. The court noted that personal jurisdiction may not be exercised over the defendant unless "the defendant's suit-related conduct" creates a substantial nexus with the forum. *Advanced Tactical*, 751 F.3d at 801. The defendant maintained an email list and sent solicitation emails to potential customers in the forum state (Indiana). *Id.* at 803. Nonetheless, the court decided that the emails sent into Indiana, coupled with an interactive website, were insufficient to establish personal jurisdiction over the defendant.

In making this holding, the court maintained that:

> "[t]he interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that "courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that the defendant is not haled into court simply because the defendant owns and operates a website that is accessible in the forum state, even if that site is interactive."

*Id.*

Plaintiffs attempt to avoid well-established precedent via allegations concerning the FT website's alleged use of cookies and pixels. In short, Plaintiffs assert that Google cookies and/or Meta pixels installed on FT's website, amounts to FT's conduct of business in Illinois, sufficient to confer specific personal jurisdiction over FT in Illinois (**Ex. 1**, **¶¶ 82-83**). Plaintiffs' argument is at odds with the above Seventh Circuit rulings. Further, the Complaint is devoid of factual allegations showing that Plaintiffs' use of FT's website from Illinois, amounts to FT's presence in Illinois.

Indeed, the Complaint contradicts itself on this point by alleging that the pixels at issue were installed on the FT's website in Texas. **Ex. 1**, **¶ 73**. Thus, according to Plaintiffs, the alleged connection to Facebook or Google, to the extent any exists, is on FT's systems, located in Houston, Texas. **Ex. 2**, **¶ 4**. The Complaint fails to allege specific personal jurisdiction through false, boilerplate allegations that the claims arise out of Defendant's acts in Illinois, or tortious conduct committed in the State of Illinois. **Ex. 1, ¶ 34**. To the contrary, even if Plaintiff's allegations are accepted as true, the alleged statutory violation occurred when information was purportedly transferred from Defendant's servers in Houston to a third party. This is not a case wherein Defendant breached a duty owed to Plaintiffs in the State of Illinois, or shipped a defective product to Illinois through the stream of commerce, causing injury. Plaintiffs have alleged no actual harm or damages, and they received the services requested from FT. Plaintiffs cannot establish specific personal jurisdiction because the claims alleged in the Complaint do not arise out of Defendant's activities in Illinois. This key element of specific personal jurisdiction has not been alleged, because it did not occur.

Plaintiffs erroneously allege that their genetic testing results were disclosed to third parties, such as Google and Facebook. That aspect of Plaintiffs' case is science fiction. FT's

Chief Financial and Administrative Officer and FT's Chief Information Technology Officer have rebutted this allegation with the truth: the genetic testing results of FT customers are protected from disclosure through multiple layers of encryption, and there is no evidence that Plaintiffs' genetic testing results have been disclosed to any unauthorized third party. **Ex. 2, ¶ 17; Ex. 3, ¶ 11.** Even if this corrosive allegation were true, any violations of GIPA occurred via the alleged tracking technology installed on FT's system located in Houston, Texas.

The record is bereft of evidence that FT purposely availed itself of the opportunity to conduct business in Illinois. The Complaint, filed in Chicago, offends traditional notions of fairness and due process. Plaintiffs voluntarily initiated connections with FT by creating accounts with FT in Houston. Respectfully, based on Seventh Circuit precedent, the Court should dismiss this case for lack of personal jurisdiction over FT.

### C. The Case should be Submitted to Binding Arbitration if the Court finds Personal Jurisdiction

If the Court decides that personal jurisdiction over FT exists, which it should not, then the 2017 TOS support FT's demand for arbitration. The Federal Arbitration Act (FAA) reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S.1, 24 (1983). The FAA supports "the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Communications, LLC,* 666 F.3d. 1027, 1032-1033 (7th Cir. 2012). Federal cases should be stayed or dismissed, and the Court should issue an order compelling arbitration when one of the parties refuses to comply with an arbitration agreement. *EEOC v. Waffle House, Inc.,* 534 U.S.279, 2889 (2002). Unless the court identifies procedural or substantive terms that are unconscionable, the court should order arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Sanchez v. Clean Net USA, Inc.,* 78 F.Supp.3d 747, 753 (N.D. Ill. 2015).

In this case, the 2017 TOS provided that if any dispute related to the services by FT cannot be resolved, the parties expressly agreed to "binding Arbitration by the American Arbitration Association (AAA) in the city of Houston, Texas under the commercial rules then in effect for the AAA, except as provided herein." **Ex. 3C, p. 10**. The arbitration clause in the 2017 is set forth under a bold heading that states "Arbitration of Disputes and Governing Law" followed by the word "Arbitration" in bold black. *Id.* Moreover, the arbitration clause states in all capital letters, among other things, that all claims must be brought "in the parties' individual capacity and that by entering into the agreement, an individual and Gene by Gene "are each waiving the right to a trial by jury or to participate in a class action." *Id.* The only exception to mandatory arbitration was a carve out for FT to seek injunctive relief in order to protect proprietary interests. ***Id.*** Plaintiffs allege that Defendant violated GIPA in the years 2017 (Odea; **Complaint ¶ 27)** and 2019 (Neblock; **Complaint ¶** 21), accordingly, the 2017 TOS agreed to by Plaintiffs should apply to this dispute.

The record confirms that Plaintiffs agreed to the 2017 TOS when each of them created their accounts. Neblock created her second FT account on February 10, 2017, and ordered a genetic test for what appears to be a male individual. (**Ex. 3, ¶ 6**). In order to create her account and utilize the FT website, Plaintiff had to click on an icon that stated, "I agree", which notified her that by clicking on the icon, she would be agreeing to the 2017 TOS. **Ex. 3, ¶ 9; Ex. 3C.** The sequence of events is similar to the sign-on process used in *Fteja v. Facebook, Inc.* 841 F.Supp.2d 829 (S.D.N.Y. 2012). In that case, the court enforced the terms of service because the existence of the terms was reasonably communicated to the user, and the user manifested assent to the online terms. *Id.* at 838. Thus, the 2017 TOS support Defendant's request for an order that compels arbitration. *See also Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024)

(observing that a valid method to "assent to and form a contract online is for a customer to click on an "I Accept" button as part of a "clickwrap" agreement" and that "[c]ourts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract." (internal citations omitted).

FT plainly notified Neblock that by creating her account, she agreed to the 2017 TOS. She could not complete the process without checking a box which stated, "I agree to the terms of service and agree to allow FTDNA to make my information available to genetic matches as described in the release form." **Ex. 3D.** The words, "terms of service" and "release form" were in orange lettering, underlined, to highlight their importance. *Id*. Those phrases were also links to the key documents, made readily available for customers to review. Given the prolific utilization of online shopping as it exists today, Plaintiffs must have understood in 2017 that they were agreeing to the 2017 TOS at issue, when they clicked on icons that clearly disclosed the terms.

Odea assented to the 2017 TOS. As part of the account creation process at Family Tree, Odea agreed to the 2017 TOS by clicking a green button that stated "Accept Terms & Complete Purchase" and that was largely surrounded by a white and gray blank screen (**Ex. 3, ¶ 10; Ex. 3E**)**.** Below the green button was a sentence that stated "By clicking Accept I agree & understand the Terms of Service and Purchase Policy." *Id.* The phrase "Terms of Services" is colored in blue, hyperlinked text that sets apart this phrase from the beginning words of the sentence. *Id.* When Odea accepted and completed the purchase with FT, she agreed to arbitration under the 2017 TOS.

This Court should analyze whether (1) the website checkout pages presented to Plaintiffs provided reasonably conspicuous notice of the terms to which they would be bound, and (2) did Plaintiffs take some action that manifested their assent to those terms. *Domer*, 116 F.4th at 695.

When deciding whether an online disclosure has afforded fair notice, courts consider five elements: (1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action. *Id.* No single factor is dispositive: the question is whether the website provided reasonable notice in light of the whole webpage. *Id.* (citations and quotations omitted).

Here, the "simplicity of the screen" was straight-forward because the screen was uncluttered and contained inputs only for (i) Odea's name and credit card information; (ii) an option to be billed later; (iii) and the payment charges. This is analogous to the type of screen that *Domer* found to be simple because the defendant in that case, Menards, had a "streamlined, well-spaced, and internally consistent [screen] …. [with] ample white space; nearly all the text and images on the screen are pertinent to the checkout process; and the page is organized into just a few neat boxes and columns." *Id.* at 696. FT also satisfies both the clarity of the disclosure prong and the size and coloring of the disclosure's font prong. FT's disclosure contains, clear express language prompting a user such as Odea to read the 2017 TOS, and the disclosure is in different color font (blue hyperlink offset from white background) than both the text of the prompt (black) and the "Accept Terms" button (green). The blue hyperlink text sufficiently notifies a user such as Odea that the 2017 TOS details are contained by clicking the hyperlink. Moreover, the totality of "Accept Terms & Complete Purchase" followed by the above disclosure explicitly communicates to a user that the user is accepting FT's Terms of Service that can easily be accessed by clicking on the hyperlink. The Seventh Circuit has found similar features in other cases sufficient to compel arbitration. *Id.* at 696-698.

FT also satisfies the final two factors showing that it provided reasonably conspicuous

notice. For example, the website text advising users of the 2017 TOS are placed directly below the "Accept Terms & Complete Purchase" button such that it is "part of the natural visual flow of reviewing the page. *Id.* at 698-699. Finally, FT's disclosure is temporally connected to the required act of the user because "the user encounters the disclosure on the same page where the order will be placed." Id. at 699. Stated differently, FT's website makes "it is easy for the user to connect the disclosure with the required activity." *Id.*

Not only does FT's website provide the requisite conspicuous notice, but it also required Plaintiffs to take actions that unambiguously manifested their assent to those terms. Odea was required to click on a green button that stated in express terms that were a different color (white) offset from its background (green). The language inserted in the button expressly stated "Accept Terms & Complete Transaction." **Ex. 3E**. Neblock was required to click an icon box that notified her: "I agree to the Terms of Service…" **Ex. 3D.** This is precisely the type of unambiguous assent that courts have found to be sufficient. *Id.* at 699-700.

Respectfully, the Court should compel arbitration of both claims.

**D. If the Court does not Compel Arbitration, the Case should be Transferred**

If the Court does not enforce the arbitration clauses, then the Court should transfer this matter, under 28 U.S.C. 1404(a), to the Southern District of Texas in Houston.

The 2017 TOS states as follows:

> You agree that: (i) the Services shall be deemed solely based in Texas; and (ii) the Services shall be deemed a passive one that does not give rise to personal jurisdiction over Gene by Gene, either specific or general, in jurisdictions other than Texas. This Agreement and any dispute regarding the Services shall be governed by the laws of the State of Texas, USA, without regard to conflict of law provisions and you agree to exclusive personal jurisdiction and venue in the state and federal courts of the United States located in the State of Texas, City of Houston for any actions for which we retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights, as set forth in the Arbitration provision above.

**Ex. 3C, p. 10.**

A forum-selection clause may be enforced by a motion to transfer under § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). A district court must first determine whether the forum selection clause applies to the claims within the complaint and whether the clause is mandatory or permissive. *Johnston-Legg v. Cook*, 23-CV-0686, 2024 WL 4333245, *2 (N.D. Ill. Sept. 27, 2024) (quoting and citing *Nulogy Corp. v. Menasha Packaging Co., LLC*, 76 F.4th 675, 679–80 (7th Cir. 2023). If the forum-selection clause is permissive, district courts have consistently declined to apply *Atlantic Marine* and instead engage in an analysis under 28 U.S.C. § 1404(a), if transfer is sought. *Johnston-Legg*, 23-CV-0686, 2024 WL 4333245 at *2.

Under 28 U.S.C. § 1404(a) even when venue is appropriate in the district where a case is currently pending, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" if certain factors weigh in favor of doing so. 28 U.S.C. § 1404(a); *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, 666 F. Supp. 3d 706, 715 (N.D. Ill. 2023). Transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Esposito v. Airbnb Action, LLC*, 538 F. Supp. 3d 844, 847 (N.D. Ill. 2020) (internal quotation marks omitted). The moving party bears the burden of demonstrating that a transfer is clearly warranted. *Id.* The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge. *Id.*

Under the first step of the transfer analysis, venue is proper in the Southern District of

Texas, the proposed transferee court, because "a substantial part of the events or omissions giving rise to the claim" allegedly occurred in that District and because FT is a resident of that District. 28 U.S.C. § 1391(b)(1) & (2). In particular, FT is a Texas Domestic Limited Partnership with its only place of business located in Houston. (**Ex. 2, ¶ 3**). The Complaint alleges that the unauthorized disclosures of genetic testing information occurred because FT installed third party tracking tools (such as pixels) "on its website" in Houston, Texas. **Complaint, ¶¶ 8.**

FT next satisfies the second step of the analysis, the convenience of the parties and witnesses. The convenience factors include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience [of] the parties. *Airbnb Action, LLC*, 538 F. Supp. 3d at 847-48. A plaintiff's choice of forum typically deserves "substantial weight, particularly when it is his home forum." *Baker v. Smith & Wesson Corp.*, 2019 WL 277714, at *3 (N.D. Ill. Jan. 22, 2019). Here, however, Neblock is a resident of DeKalb County (located in the Western Division of the Northern District of Illinois) and Odea is a resident of Champaign County (located in the Central District of Illinois). Complaint ¶¶ 20, 26.

Where the plaintiff's choice of forum is not her home forum, *e.g.* Odea, the presumption in the plaintiff's favor applies with less force. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). Additionally, "where the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value." *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (quotation omitted); *see also* *Carter v. Baldwin*, 2017 WL 3310976, at *2 (N.D. Ill. Aug. 3, 2017) ("[A] plaintiff's choice of forum merits less deference

where the events giving rise to the suit did not occur there."). While Neblock and Odea are both residents of Illinois, only Neblock is a resident of a county located in the Northern District of Illinois, and both allege that the events giving rise to the alleged violations, e.g. FT's alleged installation of third party tracking tools (such as pixels) "on its website," occurred in Houston, Texas. Thus, at best, this factor weakly favors Plaintiffs.

The situs of the events factor favors transfer to the Southern District of Texas. The location of "material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place." First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc., No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004). Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made. Preston v. Am. Honda Motor Co., No. 17 C 3549, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017). Here, FT operates its own laboratory in Houston, Texas and all of the systems and technology for FT, including its servers, which exclusively host and deploy all FT technology, are located in Houston, Texas. (Ex. 2, ¶¶ 4, 17). Additionally, all of the documents, data and information related to this case are located in Houston, Texas. (*Id.*, ¶ 19). This factor accordingly strongly favors FT and transfer to Houston.

The remainder of the factors similarly favor FT on balance. The sources of proof are all likely to be located in Houston, Texas, and it is likely that hardly any sources of proof are located in Illinois. Even if the Court discounts this factor due to the ease of transferring documents in "this day and age," it should still favor FT's request to transfer the matter to the Southern District of Texas. *Airbnb Action, LLC*, 538 F. Supp. 3d at 848. The convenience of witnesses and parties similarly should favor transfer. The majority of the 25 individuals employed by consumer genetic testing division of FT live in the Houston area. (**Ex. 2, ¶ 5**). All of the

operations and technology for FT are located in the Houston office. (***Id.***, **¶ 4**). FT has no operations in Illinois (***Id*****, ¶** ***6).*** Apart from Neblock and Odea, the majority of witnesses to this lawsuit would be FT employees, all of whom live in the Houston, Texas area. Travel to Illinois will disrupt FT's day-to-day activities and operations, and the litigation and trial of this matter in Illinois will create an undue hardship for FT. (***Id*****, ¶** ***21-22).***
Accordingly, the convenience of the witnesses and parties weighs in favor of transfer. *See, e.g.*, Soo Line R. Co., 864 F. Supp. at 65 (stating that the convenience of witnesses is one of the most important factors to be considered).

The Court should next resolve the interest of justice factors, which include docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy. *Airbnb Action, LLC*, 538 F. Supp. 3d at 849 (internal citations and quotations omitted). The median time to trial is nearly twice as long in the Northern District of Illinois (50.8 months) as the Southern District of Texas (26.3 months) as of the 12 month period ending March 31, 2024. *See* https://www.uscourts.gov/data-news/data-tables/2024/03/31/federal-judicial-caseload-statistics/c-5. The 2017 TOS require the application of Texas law (**Ex. 3C),** so a federal judge in the Southern District of Texas would likely have more familiarity with relevant authority. Finally, the Southern District of Texas has a strong interest in matters involving FT. This is because FT's business and relevant operations are all located in Houston.

Weighing and balancing all of the factors yields a result that should compel transfer of this case to Houston, Texas. This is especially so when the analysis of the 2017 TOS plainly contemplates Texas choice of law, reference to a Houston choice of venue clause for equitable



4901-0701-0638.5.37253.85260

claims, and an arbitration clause that mandates Houston, Texas as the location of arbitration. No reasonable plaintiff could have anticipated that a controversy with FT would be resolved in a location other than Houston, Texas.

## IV. CONCLUSION

FT has operated entirely within Texas, and Plaintiffs have failed to establish personal jurisdiction over the Defendant. Accordingly, Defendant respectfully requests the dismissal of this action based on the lack of personal jurisdiction.

Plaintiff agreed to TOS in 2017 that contained binding arbitration and class action waiver clauses. Pursuant to the FAA, the Court should compel arbitration of the claims, if it decides that it possesses personal jurisdiction of FT. In the alternative, absent enforcement of the agreements to arbitrate, the case should be transferred to the U.S. District Court for the Southern District of Texas.

WHEREFORE, Defendant, Gene by Gene, Ltd., d/b/a Family Tree DNA, respectfully requests that the Court grant this motion, dismissing the action for a lack of personal jurisdiction over Defendant, or in the alternative, entering an order compels arbitration, or that transfers the case to the U.S. District Court for the Southern District of Texas, while the Court grants all other relief which the Court deems just and equitable.

Respectfully submitted,

GENE BY GENE LTD., D/B/A
FAMILY TREE DNA

Date: July 8, 2025

By:*/s/ David J. Tecson*

David J. Tecson (ARDC No. 6198108)
dtecson@chuhak.com
Adrienne M. Arlan
aarlan@chuhak.com (ARDC No. 6332417)
**CHUHAK & TECSON, PC**
120 S. Riverside Plaza, Suite 1700
Chicago, Illinois 60606
Telephone: 312-444-9300
Facsimile: 312-444-9027

**CERTIFICATE OF SERVICE**

I, David J. Tecson, an attorney, hereby certify that on **July 8, 2025,** I electronically filed **DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, COMPEL ARBITRATION OR TRANSFER VENUE,** with the U.S. District Court for the Northern District of Illinois, Eastern Division's CM/ECF system, which will send electronic notification of this filing to the parties as set forth above on July 8, 2025.

*/s/ David J. Tecson*