**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MELISSA NEBLOCK and LUCINDA ODEA,

       Plaintiffs,

       v.

GENE BY GENE, LTD. d/b/a
FAMILYTREEDNA,

       Defendant.

No. 24 CV 12118

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Defendant Gene by Gene, Ltd. (FamilyTreeDNA) sells and processes genetic testing kits. Plaintiffs Melissa Neblock and Lucinda Odea allege that defendant tracked and shared their personal genetic information with third parties when plaintiffs visited defendant's website and bought testing kits. Defendant moves to dismiss the complaint based on lack of personal jurisdiction. In the alternative, defendant moves to compel arbitration. Finally, to the extent the court has personal jurisdiction over it and declines to enforce the arbitration provision, defendant moves to transfer the case to the Southern District of Texas. For the reasons discussed below, the motion is granted in part and denied in part.

## I.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. When a defendant challenges jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). If the decision is based

solely on written materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). All well-pleaded facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiff's favor. *Id.*

The Federal Arbitration Act directs a federal district court to compel arbitration when there is (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *See* 9 U.S.C. § 4; *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024). Where a court has determined that the parties agreed to arbitrate the issues at hand, it must compel arbitration and "on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). Courts review motions to compel arbitration under a standard analogous to summary judgment. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The party opposing arbitration must raise an issue of material fact about whether the parties are bound by contract to arbitrate. *Id.*

## II.    Background

Defendant FamilyTreeDNA is a direct-to-consumer genetic testing kit provider. [50] ¶ 9.[1] To use defendant's genetic testing service, consumers purchase

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The facts are taken from the amended consolidated class action complaint, [50], and the evidence submitted by defendant in

one of FamilyTreeDNA's testing kits through its website or from a third-party retailer and provide a saliva sample to defendant for analysis. [50] ¶ 10. To receive their genetic testing results, customers are required to register on defendant's website and log into their portal to view the results. [50] ¶ 11. Plaintiffs Melissa Neblock and Lucinda Odea purchased (and received) genetic testing kits through defendant's website and viewed their results by registering for accounts and logging into their portals. [50] ¶¶ 20–31.

FamilyTreeDNA allegedly installed "tracking tools" (including pixels) onto its website that collected plaintiffs' data and transmitted it to unauthorized third parties like Meta and Google. [50] ¶¶ 63, 92. Pixels are used by website operators to track user behavior. [50] ¶ 64. Meta and Google's pixels acquire information from a user's browser—including details about the user and her interactions with the website—without notifying the user. [50] ¶ 72. This information includes the fact that plaintiffs have purchased a genetic testing kit. [50] ¶ 83.

Pixels on defendant's website allow Meta and Google to link collected information to the user's identity, via her Meta or Google profile. [50] ¶ 74. In turn, these companies deploy targeted advertisements and identify new market segments to exploit. [50] ¶ 5.

---

opposition to the exercise of jurisdiction, [54-1]; [58-1]; [58-2]. The court has subject-matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): defendant is a limited partnership owned entirely by a corporation organized in Delaware and with its principal place of business in Texas, [57] at 1, plaintiffs Neblock and Odea are citizens of Illinois, [50] ¶¶ 20, 26, and the aggregate claims of all members of the proposed class are in excess of $5,000,000. [50] ¶ 32.

Before creating their accounts on defendant's website, plaintiffs were required to agree to certain terms of service. [54-1] at 55. By clicking a box that stated, "I agree," plaintiffs consented to be bound by certain policies and procedures. [54-1] at 55. The relevant terms of service included sections on arbitration and disputes and governing law, which informed users that any claims or disputes arising out of the agreement, excluding claims by defendant for injunctive or other equitable relief, would be resolved through arbitration by the American Arbitration Association in Houston. [54-1] at 78, 91.

Plaintiffs allege negligence and violations under the Illinois Genetic Information Privacy Act. [50] ¶¶ 133–157. Defendant moves to dismiss for lack of personal jurisdiction. In the alternative, defendant moves to compel arbitration.

## III.   Analysis

### A.   Personal Jurisdiction

With exceptions not relevant here, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1). The Illinois long-arm statute confers personal jurisdiction if "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c); *see also J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Thus, the question is whether exercising personal jurisdiction on FamilyTreeDNA "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

Personal jurisdiction can be general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Plaintiff does not argue that FamilyTreeDNA

is subject to general jurisdiction in Illinois but instead argues that the company is subject to specific jurisdiction for its suit-related contacts with the state. [56] at 8–13.

Specific jurisdiction analyzes the connection between the defendant, the forum, and the underlying controversy. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 395 (7th Cir. 2020). Jurisdiction is proper when the defendant takes some act by which it "purposefully avails itself of the privilege of conducting activities with the forum State." *Ford Motor*, 592 U.S. at 359. The defendant's contacts with the forum state must be its own choice and not random or fortuitous. *Id.* And the litigation must arise out of or relate to those contacts. *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

### 1. Purposeful Availment

FamilyTreeDNA first argues that it did not purposefully avail itself of the privilege of transacting business in Illinois. [54] at 6. It is true that an interactive website, standing alone, is not sufficient to establish jurisdiction over a defendant. *See Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F.Supp.3d 883, 891 (N.D. Ill. 2014) (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011)). Further, "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

But defendant did more than operate an interactive website. Defendant does not challenge plaintiffs' allegations that they ordered genetic testing kits and that the kits were shipped to their respective Illinois addresses.[2] This allegation is supported by Odea's account information with FamilyTreeDNA, which shows that she was billed for shipping defendant's product to Illinois, [54-1] at 65–68, and that over 2 percent of the company's revenue was derived from Illinois residents, [54-1] at 50. Though the number is relatively small, it is nonetheless distinguishable from the "single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing personal jurisdiction over the defendants" that was at issue in *Matlin*, 921 F.3d at 706.

"[S]pecific jurisdiction should not be exercised based on a single sale in a forum." *Id.* (quoting *Russell v. SNFA*, 987 N.E.2d 778, 794 (Ill. 2013)). But plaintiffs are alleging a class action (composed of thousands of sales to Illinois residents) and defendant cannot rationally argue that only a singular sale has been made to an Illinois consumer. The timing of defendant's sales also distinguishes the present case from *Matlin*, as plaintiffs indisputably purchased the testing kits before filing the present lawsuit.

---

[2] Defendant does, however, argue in its reply brief that "nowhere do [plaintiffs] allege or submit evidence that [FamilyTreeDNA] shipped the genetic testing kits into Illinois." [58] at 7. Issues raised for the first time in a reply brief are waived. *See Billhartz v. Comm'r of Internal Revenue*, 794 F.3d 794, 801 n.4 (7th Cir. 2015). Even if the argument were not waived, the allegations in the amended class action complaint provide a basis to reasonably infer that the products were shipped to plaintiffs at their home addresses in Illinois. *See* [54] ¶¶ 20, 26.

Although plaintiffs did not contradict defendant's sworn declarations stating that FamilyTreeDNA has never solicited business in Illinois, [54-1] at 49, personal jurisdiction may be proper irrespective of whether a company has "advertised in print media in Illinois." *Curry*, 949 F.3d at 400 (quoting *Hemi*, 622 F.3d at 756). FamilyTreeDNA's sale of testing kits to Illinois residents "provides solid evidence that [defendant] has 'purposely exploited the Illinois market.'" *Id.* (quoting *be2*, 642 F.3d at 558).

### 2.    *Suit-Related Conduct*

Specific jurisdiction also requires that defendant's minimum contacts with Illinois be suit-related. *Curry*, 949 F.3d at 400. There must be a connection between the forum state and the specific claims at issue. *See id.*

FamilyTreeDNA submits that its alleged contact with Illinois is not suit-related. [58] at 6. Unlike in *NBA Properties*, 46 F.4th at 626–27, where the act of selling infringing products to Illinois formed the basis for personal jurisdiction, or *Hemi*, 622 F.3d at 759, where the sale and shipment of cigarettes triggered the plaintiff's claims against the defendant, FamilyTreeDNA contends that there is "no allegation in this case that the kits caused any infringement or damages." [58] at 6. In support, defendant argues that the pixels at issue were installed on its website in Texas, and any alleged privacy violation would have occurred in Texas—not in Illinois as a direct result of the shipping of testing kits. [58] at 7.

But plaintiffs plausibly allege that defendant violated their privacy rights when they checked the results of their genetic testing from their browsers in Illinois—

an act that would not have been made possible but for defendant's shipment of the testing kits into the state. *See* [56] at 10–12. I can reasonably infer from plaintiffs' amended class action complaint that defendant's suit-related conduct—its alleged use of pixels to capture genetic information through its website—relates to its sale of testing kits into Illinois in furtherance of an alleged GIPA violation.

This is further supported by the fact that GIPA protects not only the results of an individual's genetic test, but also information regarding her request for genetic services. *See* 410 ILCS 513/10. Shipping testing kits to Illinois residents made possible the capture of plaintiffs' protected information. There is a sufficient connection between the suit-related conduct and the forum.

Defendant's reliance on *Matlin* and *Advanced Tactical Ordinance Systems v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), is misplaced. In *Matlin*, "the sale was not related to the underlying royalties dispute in the slightest." *NBA Props.*, 46 F.4th at 625. And in *Advanced Tactical*, the court found that any connection between a singular sale into Indiana and the trademark infringement claim underlying the litigation was "entirely fortuitous." 751 F.3d at 803.

Here, plaintiffs have plausibly alleged that the sale of defendant's product in Illinois contributed to (and furthered) the violation of their rights to privacy in their genetic information as set forth by GIPA. Whether plaintiffs can prove these allegations is not the issue at this stage of the litigation, where they need only

establish a prima facie case of specific personal jurisdiction over FamilyTreeDNA. Defendant is subject to jurisdiction in Illinois.[3]

### B.    Arbitration

Defendant next argues that plaintiffs' claims are subject to arbitration. The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2020). Here, FamilyTreeDNA argues that the applicable terms of service provided that the parties expressly agreed to binding arbitration in Houston to resolve any dispute related to defendant's services. [54] at 11. The only exception to the arbitration provision allows FamilyTreeDNA to seek injunctive relief to protect its proprietary interests. [54-1] at 78.

Plaintiffs do not challenge whether they had fair notice of the arbitration provision. They argue instead that the clause is unenforceable because (1) the present dispute arose before plaintiffs' alleged acceptance of its terms, and (2) defendant's specific arbitration clause is unconscionable. [56] at 14–18.

### 1.    Timing

The instant arbitration clause is limited to disputes "arising out of or in connection with or related to this Agreement." [54-1] at 78. "Courts construing arbitration clauses have refused to subject claims to arbitration where the claims

---

[3] Defendant does not argue that subjecting it to jurisdiction in Illinois offends traditional notions of fair play and substantial justice. And nor could it. FamilyTreeDNA derives revenue from Illinois and its use of an interactive website enables the company to conduct business nationwide. *See Curry*, 949 F.3d at 402. Further, "Illinois has a strong interest in providing a forum for its residents … to seek redress for harms suffered within the state by an out-of-state actor." *Id.*

arise from or relate to conduct occurring prior to the effective date of the agreement, *and* where the clause is limited to claims under '*this* Agreement.'" *TradeComet.com LLC v. Google, Inc.*, 435 Fed. App'x 31, 34 (2d Cir. 2011) (emphasis in original); *see also Carter v. Doll House II, Inc.*, 608 Fed. App'x 903, 904 (11th Cir. 2015).

Plaintiffs argue that the arbitration clause is inapplicable because their claims pre-date their acceptance of the terms of service. [56] at 16. Specifically, plaintiffs contend that they did not create accounts with defendant—and therefore did not agree to defendant's terms of service—until after they had already purchased their genetic testing kits. In support, plaintiffs cite to Odea's account information with FamilyTreeDNA, which shows that Odea purchased a testing kit from defendant on July 22, 2017, and then joined certain user groups a few days later on July 31, 2017. [54-1] at 65.[4]

Plaintiffs contend that this is evidence that Odea created her account on July 31, 2017. But that statement is not supported by the record. In contrast, defendant included a sworn declaration from its Chief Information Technology Officer stating that plaintiffs "could not have purchased each of their genetic testing kits without first agreeing to" defendant's terms of service at the time of purchase. [58-1] ¶ 6. This understanding is strengthened by defendant's screenshot showing what was presented to Odea when she agreed to the terms of service and created her account: Odea was required to accept the terms of service *in order to* complete her purchase.

---

[4] Plaintiffs argue that Neblock similarly did not create her account until after she purchased a testing kit in February 2017, [56] at 7 n.1, but neither party has produced a document confirming the exact date when her account was created.

[54-1] at 83. Even accepting as true plaintiffs' allegation that defendant violated GIPA the moment they purchased a testing kit (and thus formally requested genetic services), this could have been done only after plaintiffs accepted defendant's terms of service, including the arbitration provision.

Plaintiffs agreed to the arbitration clause before the disputed matter occurred.

### 2. Unconscionability

Plaintiffs next argue that the arbitration clause is unenforceable because its unilateral terms render it substantively unconscionable. [56] at 17. "[A] contract is substantively unconscionable when a clause or term in the contract is totally one-sided or harsh." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794 (7th Cir. 2014); *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014) ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." (citation omitted)).

Plaintiffs argue that the arbitration clause is substantively unconscionable because it preserves defendant's right to seek injunctive or equitable relief in court, while preventing plaintiffs from doing the same. [56] at 17.[5] But the kind of proprietary interests defendant seeks to protect through this carve-out are

---

[5] The arbitration clause at issue does not include a cost-price disparity or manifest as an overall imbalance in the parties' rights and obligations. For example, the provision does not include "a strong possibility of arbitrator bias," nor require fees that would make claims cost-prohibitive. *See, e.g., Jackson*, 764 F.3d at 789.

11

meaningfully different from the kind of redress plaintiffs are seeking through the instant lawsuit, especially given that the carve-out is limited to equitable relief. This is consistent with the general understanding that federal courts are authorized to grant preliminary injunctive relief pending arbitration when such relief is necessary. *See, e.g.*, *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983).

The one-sided nature of the carve-out is insufficient by itself to render the entire arbitration clause unconscionable. The cases relied upon by plaintiffs do not suggest otherwise. In some, the one-sided nature of the agreements is distinguishable from the limited carve-out found here. *See, e.g.*, *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill.App.3d 20, 28 (2005) (noting that the defendant exempted itself from arbitration for "a host of issues, primarily those dealing with the recoupment of money from the plaintiff"); *Peavy by Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 226 (N.M. 2020) (relying on New Mexico law to find substantive unconscionability where an arbitration clause exempts only the drafter's likeliest claim). In others, the court found that other factors contributed to its finding of unconscionability. *See, e.g.*, *Hwang v. Pathway LaGrange Prop. Owner, LLC*, 260 N.E.3d 99, 110 (Ill. App. Ct. 2024) (finding that the one-sided nature of the arbitration obligation, paired with a confidentiality clause, a provision prohibiting punitive damages, and a damages cap, rendered the arbitration agreement unconscionable).

12

Even if the arbitration clause's unilateral terms were unenforceable, they may nevertheless be severable. "In determining whether it is appropriate to sever an unconscionable provision from an agreement and enforce the remainder of the agreement, Illinois courts are to consider whether the provisions operate independently of each other or whether the valid provisions are 'so closely connected with unenforceable provisions that to do so would be tantamount to rewriting the Agreement.'" *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill.App.3d 214, 238 (2008). Given that "the strong policy in favor of enforcing arbitration agreements … is best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision," *id.* at 239, plaintiffs have failed to establish why the arbitration provision as a whole must be struck down.

The arbitration provision is not unenforceable. The arbitration provision is part of defendant's privacy policy; plaintiffs' GIPA and negligence claims, which allege violations of their privacy rights, arise out of or are related to the agreement.

I grant defendant's motion to compel arbitration of plaintiffs' claims.[6] Here, defendant notes that "federal cases should be stayed or dismissed," [54] at 11, which I take to be a request for either a stay or dismissal. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). This case is stayed pending arbitration.

---

[6] Because defendant's motion to compel arbitration is granted, I do not reach the motion to transfer venue.

## IV. Conclusion

Defendant's motion to dismiss for lack of personal jurisdiction, [54], is denied. Defendant's motion to compel arbitration, [54], is granted. The case is stayed pending arbitration.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 19, 2026